Commonwealth *v.* Gold, Appellant.

Argued March 9, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, PARKER, JAMES and RHODES, JJ.

*Harry Shapiro,* for appellant.

*Earl Jay Gratz,* Assistant District Attorney, with him *Charles F. Kelley,* District Attorney, for appellee.

OPINION BY PARKER, J., July 10, 1936:

The defendant was found guilty on an indictment containing two counts, charging the obtaining of money by false pretenses and larceny by trick. A motion for a new trial having been refused and sentence having

been imposed, defendant has appealed to this court. We are all of the opinion that the defendant is entitled to a new trial.

The first count of the indictment charged that by reason of trickery and fraud Joseph Gold, alias Joseph Goldberg, alias Mr. Weber did feloniously steal, take and carry away $620 of lawful money, property of Donald K. Belt. The second count charged that the defendant did falsely pretend and represent to one Margaret Cashell that her employer, Donald K. Belt had sent a package from Europe in care of defendant, that the package contained a valuable birthday gift from Belt to his wife, that Belt had sent from Europe to Margaret Cashell, a cablegram which was received by her, and that $620 due on the package was to be paid by Margaret Cashell to defendant. This count also charged that a package said to contain the present sent by Belt was delivered by defendant through a taxicab driver to Miss Cashell and $620 cash was paid to defendant by her, whereas in fact Belt had not sent a package in care of defendant and had not sent a cablegram from Europe in reference to the package and the package did not contain a valuable present.

The indictment and evidence in support thereof were submitted to the jury without any instructions from the court or any advice as to the nature of the offenses charged. In fact no instructions were requested by the defendant who was represented by counsel. Although the indictment contained the two counts it had but one endorsement. The court below in an opinion refusing a new trial, after referring to the fact that the indictment contained two counts said: "However, due to the fact that the back of the bill contained but one endorsement, 'False Pretense,' and to the peculiar manner in which the count of larceny by trick was attached to the bill, this count was overlooked by the prosecuting attorney and the judge at the trial." In its opinion the

court below concluded that the evidence was sufficient to sustain the verdict as to larceny by trick but intimated that it was not sufficient to sustain the other charge as there was no direct evidence offered of any representations by the defendant. The district attorney now takes the same position.

Counsel for defendant as reasons for a new trial urges that the trial judge erred in not at least calling the attention of the jury to the two main issues involved and in failing to define the offenses charged and that the evidence received was not sufficient to support a verdict of guilty on either count.

A distinctive feature of trial by jury is that the proceedings are conducted by a trial judge learned in the law. Even though in criminal cases the jury are said to be judges of fact and law, it is the duty of the jury to take the statement of the law by the court as the best evidence of the law within their reach (*Com. v. McManus*, 143 Pa. 64, 85, 21 A. 1018; *Kane v. Com.*, 89 Pa. 522; *Com. v. Gabel*, 79 Pa. Superior Ct. 59, 67). Notwithstanding any rules as to what the jury should know about the law or their duty to apply it, it remains a fact that juries are dependent on the court for advice as to the law applicable. While as a general rule a judgment will not be reversed on account of the failure of a trial judge to instruct as to particular points where a request has not been made for such instruction, there still remain certain fundamental duties which the trial court, even in the exercise of the broad discretion given it, may not omit: *Com. v. Stein*, 305 Pa. 567, 571, 158 A. 563. One of the primary requisites in doing substantial justice to all parties concerned is that the jury shall clearly appreciate the exact issues involved. Consequently when the issue is not clear it becomes the duty of the court even though not requested so to do, to give sufficient instruction to the jury that they may know precisely what proposi-

tions are submitted for their consideration so that they may render a just verdict.

We have here a rather unusual situation in that an indictment was presented to the jury containing two counts, one of which was for larceny by trick, yet owing to the way that the count was attached to the bill it was overlooked by both the court and the district attorney. If the judge learned in the law and an astute district attorney overlooked this charge it is logical to assume that the jury did not give it consideration and yet in the opinion of both the trial judge and the commonwealth's attorney, the evidence was only sufficient to sustain that one count. We therefore believe that counsel for defendant very properly argues that it was an abuse of discretion upon the part of the trial judge to fail to call the attention of the jury to both counts and define the offenses and that justice requires us to grant a new trial. It certainly is not the law that in every case where a defendant does not request the court to charge the jury and no instructions are given by the court substantial justice has been administered. Where, as here, the issues are confused and the offenses involve technical niceties, it is an abuse of the discretion ordinarily reposed in the trial court as to the scope of his charge to fail to give the jury any advice.

We are moved to our conclusion that a new trial should be granted by the additional considerations that larceny by trick is a common law offense and is not made such by statute and that the offense is one that bears a close relation to the misdemeanor of obtaining money or property under false pretenses, yet to distinguish between the two offenses requires a nice discrimination. "The distinction between larceny and false pretenses is a very nice one in many instances. In some of the old English cases, the difference is more artificial than real and rests purely upon technical grounds. Much of this nicety is doubtless owing to the

fact that at the time many of the cases were decided, larceny was a capital felony in England, and the judges naturally leaned to a merciful interpretation of the law out of a tender regard for human life ...... The distinction between larceny and cheating by false pretences is well stated in Russel on Crimes, 5th Amer. ed., 28. After an exhaustive review of the cases the learned author says: 'The correct distinction in cases of this kind seems to be, that if by means of any trick or artifice, the owner of property is induced to part with the possession only, still meaning to retain the right of property, the taking by such means will amount to larceny; but if the owner part with, not only the possession of the goods but the right of property in them also, the offense of the party obtaining them will not be larceny, but the offense of obtaining goods by false pretences' ": *Com. v. Eichelberger,* 119 Pa. 254, 264, 13 A. 422. The remarks of Judge HENDERSON in the case of *Com. v. Von Foerster,* 79 Pa. Superior Ct. 174, 179 are pertinent where he said: "The willingness of jurors untrained in legal distinctions to attribute fraudulent motives because of the untoward results of enterprises makes it necessary that the distinctions of the common law or of the statutes be correctly applied to avoid the result that criminal justice may be applied on general principles rather than according to law." As the case must be retried, we refrain from expressing any opinion as to the weight of the evidence presented in support of either count, but we deem it proper to call attention to an erroneous ruling in order that the same may be corrected if the occasion arises when the case is retried.

The commonwealth gave evidence tending to prove the bare facts that Miss Cashell received a cablegram purporting to be from her employer Belt, that she conversed on the telephone with a man unknown to her who said he represented a Mr. Weber, and that as a result of this conversation she went to Philadelphia

taking with her $620 in cash. On her arrival she was met at the Philadelphia railroad station by a taxicab driver named Nagle in a yellow cab hired by the defendant, who asked her if she was Miss Cashell and she said that she was. She testified further in part as follows: "Then he said, 'Mr. Weber has been delayed a little while and he wants to know if you will wait for him.' I said I would. Mr. Nagle then went away and he returned about ten or fifteen minutes later, and he said, 'Mr. Weber is sorry he cannot come himself, but he gave me this package to give to you.' And with that he handed me a package from the taxicab, and I gave him the envelope and I said, 'Be sure Mr. Weber gets this.' Q. And in the envelope there was $620? A. Yes, sir." The taxicab driver was called as a witness and testified that the defendant who said he was Mr. Weber met him at his cab stand at 13th and Walnut Streets and engaged a cab for use an hour later and arranged to meet him at 37th and Chestnut Streets. When the driver kept the appointment Weber said that he was not ready to use the cab but wished him to deliver a message to a young woman at 39th and Chestnut Streets, whom he was to tell that Mr. Weber would be delayed a few minutes. The message was delivered and by prearrangement the driver then met Mr. Weber at 42d and Chester Streets, about seven blocks away. At that point Weber directed the driver to deliver the package to Miss Cashell and take her receipt for it. The driver did as directed and then met the defendant at the Walnut Plaza Hotel at 63d and Walnut Streets, gave him the envelope received from Miss Cashell and received a tip of $10. Miss Cashell did not open the package until she returned to Baltimore when she discovered that it contained some comparatively worthless washing powder of the value of $3 or $4.

The commonwealth, after showing these facts, then

asked Miss Cashell to detail her conversation with the man who had telephoned to her at Baltimore and made the arrangement to meet her. The trial judge refused to receive this evidence on the ground that Miss Cashell was not familiar with the voice of the person who called her. This was clear error. One of the purposes of the commonwealth in offering this evidence was to show the alleged false pretences or false representations which were made. If the representations were made by Weber or someone authorized to speak for him there would be no question about their competency. There remained but one obstacle to the receipt of the evidence and that was the identity of the person with whom Miss Cashell conversed on the 'phone. The commonwealth was not confined to proof of familiarity with the voice of the person telephoning.

The fact that Weber was the person who telephoned or was responsible for the person who telephoned Miss Cashell is not to be distinguished from any other fact and may be proved by competent direct or circumstantial evidence. The commonwealth had produced evidence which if believed was sufficient to warrant the jury in finding that it was either Weber or someone authorized to speak for him who had the conversation by telephone with Miss Cashell and arranged to meet her in Philadelphia. Not only was such conversation admissible but it was highly persuasive. It is hardly conceivable that Miss Cashell having no previous acquaintance with Weber would have taken $620 and gone from Baltimore to Philadelphia, a large city, for the purpose of meeting him and that he should have known she was coming and the time when she would arrive and arranged to meet her if he had not been the party who telephoned or had authorized such party to speak for him to Miss Cashell. That such evidence was admissible and competent for the purpose of proving what representations were made by Weber seems too clear to

require argument. Evidently the cablegram purporting to come from employer Belt was not produced on the trial of the case for the same reason. The message was important and competent evidence if identified.

Judgment reversed with a new trial.