# Light v. Esbenshade

C.P. of Lebanon County, No. 2009-20401

*Edward J. Coyle*, for plaintiff.
*Wiley P. Parker*, for defendant.

CHARLES, *J.*, December 10, 2013—For almost two centuries, the law governing authenticity of evidence evolved to regulate admissibility of written documents. In less than two decades, electronic communication has supplanted written documentation as the primary method of transmitting and storing information. As it relates to authenticity, the law is struggling to keep up with technology. As aptly noted in one respected treatise:

> Proper authentication of emails and other instant communications, as well as all computerized records, is of critical importance in an ever-increasing number of cases, not only because of the centrality of such data and communications to modern business and society in

general, but also due to the ease in which such electronic materials can be created, altered, and manipulated.

34 A.L.R. 6th 253 — Authentication of Electronically Stored Evidence, Including Text Messages at Section 2.

Before us today is the defendant's authenticity challenge to text message and email communications offered into evidence by the plaintiff. The defendant asserts that he did not author incriminating e-messages sought to be introduced. He further claims that the messages were fabricated in an effort to portray him as something he is not. Because admissibility of e-communication in the above-referenced case is of critical importance, and because Pennsylvania law regarding authenticity of e-communications is still evolving, we will take this opportunity to author an opinion to explain why we will admit some exhibits and exclude others.

## I. FACTS

Defendant Paul J. Esbenshade (hereafter "father") and plaintiff Jenna M. Light (hereafter "mother") are the parents of a five year old daughter who is the subject of a custody order entered into on December 11, 2012. Among other things, the custody order afforded each parent with three weeks of uninterrupted custody during summer months. The custody order also permitted reasonable telephone and email communications between the child and the non-custodial parent. In addition, the court order stated: "Neither parent shall engage in a course of conduct designed to alienate the child from the other parent."

On October 4, 2013, father filed a *pro se* petition for civil contempt alleging that mother was "not obeying any

provisions of the court order." Three weeks later, mother's attorney filed a request for a bill of particulars. By a court order dated October 30, 2013, we directed that father provide a written statement within ten days outlining which terms of our court order he alleges were violated by mother.

On November 12, 2013, father filed a counseled bill of particulars. In that document, father alleged that mother withheld two one week periods of physical custody during the summer. Father also alleged that mother refused to allow father to see his daughter during certain weekends. He also alleged that mother encouraged the child to call someone else "daddy" and that mother precluded telephone contact between himself and the child.

We scheduled a hearing regarding father's contempt motion and began that hearing on November 21, 2013. During the hearing, it became obvious that mother intended to rely heavily upon text message and email communications purportedly sent by father. According to mother, one of father's emails stated: "I don't want to see are little girl anymore and you can leave alone please drop up the papers so I can sing off and she is all yours." [sic] Other emails purportedly offered to sign over parental rights in return for a withdrawal by mother of her child support complaint. father objected to the authenticity of these emails. Pursuant to the authority vested in us by Pa.R.Ev. 104,[1] we recessed the contempt hearing and convened a separate factual hearing to determine the

---

1. Pa.R.Ev. 104 authorizes a trial court to conduct a separate factual hearing to determine admissibility of challenged evidence. The Rule further provides: "In so deciding, the Court is not bound by evidence rules, except those on privilege."

admissibility of the emails.

During our Rule 104 hearing, we learned that father communicated with mother via text message from seven different phone numbers. Mother testified that she always knew which number belonged to father because his name would appear whenever his text message was received. In addition, mother stated that she knew she was communicating with father due to the context of the messages themselves and due to the fact that father was a notoriously bad speller. Finally, mother stated that she did not have the technological expertise to edit or change text messages in order to make them appear that they were being sent by father.

Father vehemently denied that he ever offered to give up parental rights in return for child support indulgence. He further stated that he never communicated a desire to give up his one week periods of custody during the summer. Father pointed out that one of the primary telephone numbers from which the disputed messages emanated was 717-454-1719. He states that his boss, Dave Hacket, had access to this telephone and could have sent the offensive messages. Father also testified that none of his cell phones were password protected. He hypothesized that others in addition to Mr. Hacket could have taken the telephones and sent the offending text messages. Finally, father argued that mother could have fabricated the text messages.[2] Based upon these factors, father argued that none of the proffered e-communications could be admitted without technical testimony from his internet or cell phone

2. According to father, mother bragged about having the expertise to create fictitious text messages. We do not find father's testimony in this regard to be credible.

provider.

Following completion of the rule 104 hearing, we took under advisement the authenticity challenged raised by father. Since the hearing concluded, we have conducted extensive legal research regarding admissibility of electronic communications and social media. Our conclusions generated from this research will be described below.

## II. LEGAL DISCUSSION

The requirement of authentication is a long-standing principle of evidence. It has been codified at Pa.R.Ev. 901. That rule states:

> General Rule Provision — The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

Pa.R.Ev. 901(a). Historically, authentication has been established either by direct proof or circumstantial evidence. Our Superior Court has stated:

> A document may also be authenticated by circumstantial evidence, a practice which has been uniformly recognized as permissible...Proof of any circumstances which will support a finding that the writing is genuine will suffice to authenticate the writing. The courts of this Commonwealth have demonstrated the wide variety of types of circumstantial evidence that will enable a proponent to authenticate a writing. *See, e.g., Commonwealth v. Nolly*, 290 Pa. 271, 138 A.

836 (1927) (letters authenticated by contents; facts known only to sender and recipient); *Commonwealth v. Bassi*, 284 Pa. 81, 83, 130 A. 311 (1925) (unsigned letter authenticated by defendant's nickname written on it, along with contents indicating knowledge of matters familiar to both defendant-sender and witness-recipient); *McFarland v. McFarland*, 176 Pa. Super, 342, 345, 107 A.2d 615, 616 (1954) (authentication by writer's style and diction); *Commonwealth v. Gold*, 123 Pa. Super. 128, 135-36, 186 A. 208, 2011 (1936) (dicta) (circumstantial evidence authenticating telephone call by recipient's subsequent actions would have sufficed to identify cable gram if offered); *Campbell v. Wade*, 83 Pa. Super, 415, 418 (1924) (purported author's subsequent keeping of appointment arranged in letters sufficient to authenticate)...

Clearly then, a writing can be authenticated by circumstantial evidence that may take a number of forms, and tends to show that the writing is what it purports to be. As the above-cited cases indicate, such evidence may, depending upon the facts at issue, include proof of: the timing and method of delivery of the document, information in the contents of the writing that is known by the purported sender and the recipient, events preceding and following the execution or delivery of the writing, other communications by the purported sender prior to or following the execution or delivery of the document, the appearance of the purported sender's name or letterhead on the document, the handwriting technique, or the style of expression used in the language of the writing.

*Commonwealth v. Brooks*, 508 A.2d 316, 318-20 (Pa.

Super.1986) (some citations omitted).

While none of the principles articulated above have been altered by our appellate courts, application of the traditional rules governing authenticity has been complicated by recent technological advances. These complications have been highlighted in three recent Pennsylvania appellate court decisions. In chronological order, these decisions are as follows:

(1) *Hood-Ohara v. Wills*, 873 A.2d 757 (Pa. Super. 2005) — *Hood* involved a PFA order that was entered after a contested hearing. At trial, the defendant sought to present evidence in the form of emails. These emails were purportedly offered by the plaintiff's mother and contained references to the plaintiff's purported drinking problem. The court noted that these emails were hearsay and were inadmissible as such. However, the court also addressed the issue of authenticity. The court stated:

Additionally, as pointed out by the trial judge, there were authentication problems with regard to the emails. Although testimony revealed that the email address grannyprix@aol.com did in fact belong to O'Hara's mother, Mrs. Hood, it was denied by Mrs. Hood that she was the author of the emails. FN N.T., 06/02/2004, at 54-55. We find that the emails were properly excluded.

FN Mrs. Hood testified that she had problems in the past with her email account and had to, on at least one occasion, change her password. Although the trial judge may have improperly interjected that she had been told it was possible to "fake" an email and have it look as if

someone else had sent it, we agree with the trial judge that the emails were not properly authenticated.

(2) *In re F.P.*, 878 A.2d 91 (Pa. Super. 2005) — F.P. was a juvenile delinquency case via which the defendant was charged with aggravated assault. Transcripts of instant messages between the defendant and the victim were admitted in evidence at trial. In the messages, the defendant accused the victim of stealing from him and threatened to beat her up. On appeal, the defendant argued that the messages should not have been admitted because "it was not proved that appellant was the author." He also contended that email and instant messages are "inherently unreliability" and should not be easily authenticated. The Superior Court disagreed and stated:

Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. The requirement of authentication or identification is codified at Pennsylvania Rule of Evidence 901, 42 Pa.C.S.A.: "(a) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Pa.R.E. 901(a). Testimony of a witness with personal knowledge that a matter is what it is claimed to be may be sufficient to authenticate or identify the evidence."

A document may be authenticated by direct proof and/or by circumstantial evidence. [P]roof of any circumstances which will support a finding that the

writing is genuine will suffice to authenticate the writing. The courts of this Commonwealth have demonstrated the wide variety of types of circumstantial evidence that will enable a proponent to authenticate a writing.

*Id.* at 93-94 (citations omitted).

In *F.P.*, the following evidence was presented:

(a) The messages were listed on the recipient's screen as having been generated by a user with the name of "lcp4Life30."

(b) The victim believed that the defendant used this screen name.

(c) The messages involved an alleged stolen DVD. Evidence was presented to corroborate that the defendant believed the victim had stolen this DVD.

(d) Other conversations existed via instant messaging. The victim testified that these other conversations involved issues between himself and the defendant.

(e) In the first instant message communication, the victim asked, "Who is this?" and the appellant replied by giving his first name.

(f) The victim notified his school counselor that he received threatening messages from the defendant. The guidance counselor conducted a mediation between the defendant and the victim. During this mediation, the defendant did not deny sending instant messages under the screen name outlined above.

(g) In the final instant message conversation that occurred just prior to the assault, the defendant

referenced the victim's report of his behavior to school officials and reiterated his threats.

The court stated:

Clearly, there was sufficient evidence that appellant was "lcp4Life30" and sent the threatening messages to [the victim]. He referred to himself by his first name. He repeatedly accused [the victim] of stealing from him, which mirrored testimony that appellant was angry about a stolen DVD. Appellant referenced the fact that [the victim] had approached high school authorities about the instant messages...Repeatedly, appellant called [the victim] vile names and threatened to beat him up. All of this evidence, taken together, was clearly sufficient to authenticate the instant message transcripts as having originated from appellant. *See Commonwealth v. Brooks*, 508 A.2d 316 (Pa. Super. 1986) at 321 ("[T] he foundation may consist of circumstantial evidence and may include factors relating to the contents of the writing and the events before and after the execution of the writing.").

*Id.* at 95.

(3) *Commonwealth v. Koch*, 39 A.3d 996 (Pa. Super. 2011) — As part of a drug investigation, police seized two cell phones, one of which belonged to the defendant. The text messages on the defendant's phone were transcribed and the Commonwealth offered the contents of these messages in evidence. The trial court admitted this evidence over objections based upon authenticity and hearsay. The defendant appealed based upon the argument that the Commonwealth was not able to establish authenticity of the text messages.

The Superior Court defined authentication within the context of text messaging as follows:

> Pennsylvania Rule of Evidence 901 provides that authentication is required prior to admission of evidence. The proponent of the evidence must introduce sufficient evidence that the matter is what it purports to be. Testimony of a witness with personal knowledge that a matter is what it is claimed to be can be sufficient. Furthermore, electronic writings typically show their source, so they can be authenticated by contents in the same way that a communication by postal mail can be authenticated. Circumstantial evidence may suffice where the circumstances support a finding that the writing is genuine.

*Id.* at 1002 (citations omitted).

In *Koch*, police conceded that while the messages were recovered on the defendant's phone, there was no evidence to establish that the defendant herself authored the messages. Moreover, some of the disputed messages referenced the defendant "in the third person." The court concluded that these messages were "not written by her." Furthermore, some text messages had been deleted and others were not complete. The court stated:

> [T]he difficulty that frequently arises in e-mail and text message cases is establishing authorship. Often more than one person uses an e-mail address and accounts can be accessed without permission. In the majority of courts to have considered the question, the mere fact that an e-mail bears a particular e-mail address is inadequate to authenticate the identity of the author; typically, courts demand additional evidence.

Text messages are somewhat different in that they are intrinsic to the cell phones in which they are stored. While e-mails and instant messages can be sent and received from any computer or smart phone, text messages are sent from the cellular phone bearing the telephone number identified in the text message and received on a phone associated with the number to which they are transmitted. The identifying information is contained in the text message on the cellular telephone. However, as with e-mail accounts, cellular telephones are not always exclusively used by the person to whom the phone number is assigned.

*Id.* at 1004-1005.

The trial court ruled that the messages found on the defendant's phone were sufficiently authenticated to be admissible. The trial court reasoned that doubts as to the identity of the sender went to the weight of evidence and not its admissibility. The Superior Court responded:

We disagree. Authentication is a prerequisite to admissibility. The detective's description of how he transcribed the text messages, together with his representation that the transcription was an accurate reproduction of the text messages on appellant's cellular phone, is insufficient for purposes of authentication where the Commonwealth concedes that appellant did not author all of the text messages on her phone. We held in *In the Interest of F.P., a Minor*, and courts of other jurisdictions concur, that authentication of electronic communications, like documents, requires more than mere confirmation that the number of address belonged to a particular person. Circumstantial

evidence, which tends to corroborate the identity of the sender, is required.

*Id.* at 1005.

Based upon the above, the Superior Court reversed the defendant's conviction and returned the case to the trial court for a new trial.[3]

As is obvious from the above, there has not been unanimity of result among our appellant courts relative to authenticity of e-communications.

This diversity of results is consistent with evolving law from across the United States. *See* 34 A.L.R. 6th 253; Annotation — Authentication of Electronically Stored Evidence, Including Text Messages. For example, some cases have admitted text messages even in the face of legitimate authenticity questions. *See, e.g., U.S. v. Mebrtatu*, 2013 WL5814139 (3rd Cir. 2013) (The court stated: "The content of the text messages indicates that Mebrtatu was the user of the seized phone and hence the sender and receiver of messages found on that phone... the government produced sufficient evidence to satisfy its slight burden of proof for authentication.") and *Dickens v. State*, 927 A.2d 32 (M.D.App. 2007) (Text messages allegedly sent by defendant were admitted even though the phone from which messages were sent belonged to the defendant's son). On the other hand, other cases have refused to authenticate text messages, especially when the only authenticating testimony is from an investigator or the text recipient. *See, e.g., U.S. v. Netschi*, 511 Fed.

---

3. *Koch* was appealed to the Pennsylvania Supreme Court. The Supreme Court granted alocatur. A decision should be issued by the Supreme Court in the relatively near future.

Appx.58 (2nd Cir. 2013) (An investigator's testimony that he discovered text messages in the inbox of the defendant's telephone was not sufficient to establish authenticity) and *State v. Harris*, 2011 WL6365165 (Mo.App. 2011) (Testimony of text recipient alone is not enough to authenticate the message).

Even though unanimity of outcome does not exist, we have nevertheless been able to glean some important common themes from all of the cases we reviewed. From those common themes, we have reached the following conclusions of law:

(1) Authentication requires a fact-specific analysis. There is no one-size-fits-all rule that either guarantees or precludes admissibility of e-communication.

(2) Direct evidence from an internet or cell phone provider is not required. While such evidence is indeed relevant, no case has required that a provider's technician be present to verify when, how and by whom a message was sent.

(3) Circumstantial evidence is critical to determining authenticity. In the case of e-communications, the contents of the actual messages are vital to determine whether they were actually sent and/or seen by the objecting party.

(4) The bar of authenticity is neither high nor difficult to hurdle. As stated in *U.S. v. Mebrtatu*, *supra*, the proponents' burden to prove authenticity is "slight."[4]

---

4. From a procedural standpoint, the above conclusions reinforce and reaffirm our decision to conduct a hearing under Pa.R.Ev. 104. The beauty of a Rule 104 hearing is that we can consider otherwise inadmissible

We will employ these legal conclusions when analyzing the authenticity of the text messages that father challenges.

## III. ANALYSIS

Mother asks us to admit email communications and text messages sent from two separate telephones. Employing the legal paradigm outlined above, we will separately address each type of e-communication.

### 1. Text Message From 717-454-1719

Mother seeks to introduce a series of text messages contained in exhibits 4 and 5. The text messages contained in these exhibits are the ones of primary importance to the above-referenced dispute because they contain father's purported statements that he would give up custody rights in return for an elimination of child support. With respect to the text messages sent from 717-454-1719, the parties presented significant evidence.

Father acknowledged that some of the text messages from 717-454-1719 were in fact his. However, he denied authorship of the more damaging text messages found in exhibits 4 and 5. He indicated that his phone was not password protected. He also indicated that both his boss and his wife had access to his phone and could have sent the troubling text messages. Alternatively, father argues that mother had the expertise to fabricate these text messages and that she did so in an effort to deflect responsibility for

---

evidence in making our preliminary authenticity decision. In other words, we are not limited in a Rule 104 proceeding to information that would be admissible in the underlying trial. This is of critical importance with respect to text messaging because the contents of the disputed text and otherwise irrelevant texts can be reviewed to determine whether the texts themselves were authentic.

her own contemptuous conduct.

In response, mother presented a plethora of circumstantial evidence to establish authenticity. This circumstantial evidence included the following:

(1) Father admitted that 717-454-1719 was his telephone number.

(2) Father admitted that with only a few exceptions, he generally retained possession of his cell phone.

(3) Father purchased the phone for which 717-454-1719 was the number.

(4) Father paid for the cellular service for telephone number 717-454-1719.

(5) Between April and October of 2013, mother frequently called 717-454-1719 and father answered the telephone.

In addition to the above evidence, the actual contents of exhibits 4 and 5 were presented for our consideration. From the text messages themselves, we gleaned the following:

(1) Mother described father as a notoriously bad speller. Many of father's text messages did in fact contain misspelled words.

(2) A text message on April 27 referred to the parties' daughter by her correct name.

(3) A text message of April 27 indicated that father was traveling to Pittsburgh. In his testimony, father acknowledged that he moved to Pittsburgh for a time.

(4) A text message of June 26 again mentions the parties' daughter by her correct name.

(5) Extensive text messages on June 26 and June 27 refer to a child support dispute that was pending between the parties.

(6) Exhibit 3 contained an email sent to mother that involved the daughter's eye doctor appointment on May 14. This email begins: "Jenna, Hello this is Paul..." A text message sent from 717-454-1719 on May 14 references the parties' daughter by name and discusses "her next appointment for her eyes."

From the above, we are satisfied that enough information has been presented to circumstantially establish authenticity of exhibits 4 and 5. Does this preclude the possibility that some of the text messages were fabricated? No it does not. Does this ruling prevent father from substantively arguing that he was not the author the disputed text? Once again, it does not. All we say today is that the relatively low bar of authenticity has been hurdled by mother with respect to text messages sent from 717-454-1719. Therefore, exhibits 4 and 5 will be admitted in evidence. Decisions regarding the weight and believability of the information contained therein cannot and will not be made until the underlying contempt hearing is concluded.

2. Text Messages from 717-644-7170

Exhibit 6 contains text messages sent from a different telephone number than the one referenced in the preceding section. These text messages were sent between November 5 and November 7. Almost all of these text messages are sexually explicit. None of them refer by name to the

parties' daughter.

The type of circumstantial evidence presented by mother with respect to 717-454-1719 was glaringly absent as it relates to 717-644-7170. In fact, the name affixed to the latter telephone number in mother's cellular phone is denoted: "Paul?" This connotes that there was at least some question in mother's mind as to whether 717-644-7170 could be linked with father. Because none of the sexually explicit text messages include information that could be linked uniquely to father, the contents of the text messages found on exhibit 6 do not assist us in determining authenticity.

Even though the standard for determining authenticity is relatively liberal, we must conclude that insufficient evidence was presented to authenticate the text messages found in exhibit 6. Accordingly, father's objection to exhibit 6 will be sustained.

3. Email Communications

A series of emails were presented as exhibit 3. These emails were between Jenna Light at "lighty1618@gmail.com" and Andrea Cole at "Christian_girl61704@yahoo.com." Most of these emails deal with doctors' appointments and counseling sessions for the parties' daughter.

The key evidence linking father to these emails is one email entry dated March 31, 2013. This email was sent to mother from the Andrea Cole web address and stated:

Jenna,

Hello this is Paul however the counseling appointment doesnt fit my schedule please reschedule for a time

after 3:30 p.m. and my wife is to be present if that is a issue we will take further action thanks

Paul

In addition, the Andrea Cole emails consistently referred to communications referencing the parties' daughter by her correct name. Mother also testified that she and father had verbal telephone conversations regarding many of the appointments referenced in those emails. More important, father did not challenge that he utilized the Andrea Cole email address to communicate with mother.

We believe that sufficient evidence was presented to authenticate the emails. Father acknowledged that he used the Andrea Cole email address. All of the emails refer to the parties' daughter by name. In one email, father identifies himself. Moreover, the emails refer to appointments that would have been of importance only to mother and father. Accordingly, we will declare exhibit 3 to be authentic and will admit into evidence.

## IV. CONCLUSION

Even though the law of evidence as it relates to e-communications is still evolving, we are confident that Pennsylvania's use of circumstantial evidence to establish authenticity will persevere. To be sure, the form of the circumstantial evidence has changed and will continue to change with the advent of new technology. However, we are confident that the legal precept that authenticity can be based upon circumstantial evidence will remain ingrained within Pennsylvania common law.

In this case, abundant circumstantial evidence exists to establish authenticity of the text mails received by mother

from telephone number 717-454-1719. We also conclude that sufficient circumstantial evidence exists to justify admission of the emails contained in exhibit 3. However, insufficient circumstantial evidence exists to authenticate those text messages from 717-644-7170 found in exhibit 6. Therefore, exhibits 3, 4 and 5 will be admitted into evidence and exhibit 6 will not.

None of our rulings today will prevent either party from presenting additional evidence to challenge or corroborate the substantive veracity of information contained in the admissible text messages and emails. Still, exhibits 3, 4 and 5 will be considered by us along with all other information and testimony that the parties choose to present. An order to effectuate the above will be entered this date.

## ORDER OF COURT

And now, to wit, this 10th day of December, 2013, after a hearing conducted pursuant to Pa. R.Ev. 104 and in accordance with the attached opinion, the evidentiary rulings of this court are as follows:

1. The defendant's objection to exhibit 3 is overruled. Said exhibit is admitted into evidence.

2. The defendant's objection to exhibit 4 is overruled. Said exhibit is admitted into evidence.

3. The defendant's objection to exhibit 5 is overruled. Said exhibit is admitted into evidence.

4. The defendant's objection to exhibit 6 is sustained.

The conclusion of the parties' underlying contempt hearing will take place on the 7th day of January, 2014 commencing at 11:00 a.m. in Courtroom No.3.