J-A14025-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| WILBERT COLON | |
| Appellant | No. 301 MDA 2014 |

Appeal from the Judgment of Sentence January 15, 2014
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0004513-2012

BEFORE:  BENDER, P.J.E., JENKINS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY JENKINS, J.:                    **FILED MAY 18, 2015**

A jury found Wilbert Colon guilty of first degree murder[1], third degree murder[2], aggravated assault[3], carrying firearms without a license[4], and possession of an instrument of crime ("PIC").[5]  The trial court sentenced Colon to life imprisonment without possibility of parole for first degree murder, 3½ - 7 years' imprisonment for carrying firearms without a license

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(a).

[2] 18 Pa.C.S. § 2502(c).

[3] 18 Pa.C.S. § 2702(a)(1).

[4] 18 Pa.C.S. § 6106(a)(1).

[5] 18 Pa.C.S. § 907(a).

and 16 months' – 5 years' imprisonment for PIC. Colon's sentences for carrying firearms without a license and PIC both run concurrently with his first degree murder sentence.[6] Colon filed a timely notice of appeal, and both Colon and the trial court complied with Pa.R.A.P. 1925. We affirm.

Colon raises five issues in this direct appeal, which we re-order for the sake of convenience:

> 1. Whether the evidence presented by the Commonwealth in their case in chief was insufficient as a matter of law to establish [Colon]'s guilt beyond a reasonable doubt, given the extremely contradictory, inconsistent, biased and patently unreliable testimony of the Commonwealth witnesses who had a vested interest in the outcome of the trial, thereby warranting a judgment of acquittal and/or new trial.[7]
>
> 2. Whether the trial court erred and/or committed an abuse of discretion and/or deprived [Colon] of his right to due process and/or a fair trial in allowing the Commonwealth to introduce evidence of a letter or note purportedly written by [Colon], that was found in the prison laundry, without proper foundation or any authentication. Said letter or note was extremely prejudicial which outweighed any probative value and should not have been admitted and read to the jury.

___

[6] At sentencing, the trial court dismissed the charge of persons not to possess firearms (18 Pa.C.S. § 6105). Colon's convictions for third degree murder and aggravated assault merged with his first degree murder conviction for purposes of sentencing.

[7] One might infer from this language that Colon challenges the weight of the evidence, but the discussion in his brief makes clear that he challenges the sufficiency of the evidence. Accordingly, we treat this issue as a challenge to the sufficiency of the evidence.

3. Whether the Court erred in allowing the Commonwealth to violate Colon's Due Process Rights and/or rights under the 14th, 5th and 6th Amendments, specifically, by allowing [Investigator] Perkins to testify from a police report that was being used as substantive evidence regarding alleged false statements made by [Colon], where [Colon] was not shown the police report, said police report was not adopted by [Colon] and the report was not a verbatim recording of [Colon]'s statement to Perkins.

4. Whether [Colon] was denied a fair trial by the prosecutorial misconduct of the assistant district attorney, who asked a highly prejudicial and inflammatory question regarding [Colon]'s failure to voluntarily come into the police station to speak with the police under circumstances whereby it can be reasonably assumed that a jury would naturally draw an adverse inference from the comment, thereby violating [Colon]'s 5th and 6th Amendment rights and warranting a new trial.

5. Whether [Colon] was denied a fair trial by the prosecutorial misconduct of the assistant district attorney, who made a highly prejudicial and inflammatory statement regarding [Colon]'s pre-arrest silence under circumstances whereby it can be reasonably assumed a jury would naturally draw an adverse inference from the comment, in violation of [Colon]'s 5th and 6th Amendment rights and right to Due Process, thereby warranting a new trial.

Brief For Appellant, pp. 9-10.

We first address Colon's challenge to the sufficiency of the evidence.

Our standard of review is well-settled:

[W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable

- 3 -

doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Commonwealth v. Troy*, 832 A.2d 1089, 1092 (Pa.Super.2003) (citations omitted).

The following evidence was adduced during trial: at 7:00 p.m on June 15, 2012, two Reading police officers were attending to a domestic call when they heard several gunshots. N.T. 91-92.[8] The officers proceeded on foot to 16th and Cotton Streets, where they observed a number of people running. *Id.* at 93, 122. A group of people stood near the victim, Tarik Billups ("the victim"), who was lying on a porch on Cotton Street. *Id.* at 93. Officer Linderman called for medical assistance and found three spent shell casings near the sidewalk in front of the porch. *Id.* at 106-107. Billups later died at the hospital. *Id.* at 128-29.

---

[8] The transcript from Colon's five-day trial is a single transcript with consecutively numbered pages.

Another officer at the scene, Officer Shreiner, went to the businesses located in the area to retrieve any surveillance footage. *Id.* at 134. Shreiner retrieved a video from the business located at the corner of 16th and Cotton Streets called Tack's Sandwich Shop, which showed some of the actors involved in the incident both prior to and after the shooting, but not the shooting itself. *Id.* at 135, 143.

An evidence technician collected multiple items which appeared to be connected to the shooting, including a hat taken from the breezeway between the porches, a blood swab from the porch, a gray sweatshirt found near the porch, a broken beer bottle found near the porch, and the aforementioned shell casings. *Id.* at 146, 156.

Following the shooting, through review of the video and the interview of an eyewitness, Jenny Matetich, the police determined that the victim and multiple other individuals (Brandon Harrison, Antonio Kreiser, Luis Cordovez, Jalil Jacquez, and an unknown black male) were involved in an altercation prior to the shooting. Matetich, who was unloading items across the street, witnessed a brawl between the victim, Kreiser, and the unknown black male, and she heard gunshots soon thereafter and looked away. *Id.* at 226-227. Matetich also saw one individual who was wearing a gray sweatshirt prior to the shooting but not after the shooting. *Id.* at 227.

Investigator Perkins interviewed Harrison, Kreiser, Cordovez, and Lamont Gore, who was a friend of the victim and a resident of Cotton Street.

Gore stated that the victim was visiting his house when he heard a group of men yelling for the victim to come outside. *Id.* at 523. Gore identified this group as Colon, Harrison, Kreiser, Cordovez, Jacquez and the unknown black male. *Id.* at 524. Gore stated that Kreiser approached the victim yelling and heard Colon, who was wearing a gray sweatshirt, say: "I have the hammer on me", which Gore took to mean a firearm. *Id.* at 527. Kreiser threw a bottle at the victim, and a brawl "erupted." *Id.* at 528. The fight moved from Gore's porch across another porch and ended with the victim being knocked down onto a third porch. *Id.* at 531-532. As the fight wound down, the only individual on the porch was the victim, who was beginning to get back up. *Id.* at 535. At that point, Gore saw only Colon, who was no longer wearing the gray hooded sweatshirt, run onto the porch, shoot the victim three times, and flee down a breezeway. *Id.* at 536.

Perkins also took statements from Cordovez, Harrison, and Kreiser (who all subsequently testified to these facts at trial). All three stated that they met at a house on Cotton Street and walked down to the Cotton Gin in order for Kreiser to buy a beer. *Id.* at 295. Kreiser stated that after he exited the bar, he observed that Colon had left the group and had gone back up the street. *Id.* at 329. Cordovez and Harrison, as well as the video, corroborate this fact. Kreiser observed Colon up the street across from Gore's house, arguing with the victim. *Id.* at 329. As the rest of the group walked towards Gore's house, Colon ran at the victim, who went back into

Gore's house. *Id.* at 329. The victim exited Gore's house and had words with the group about an altercation the night before. *Id.* at 330. At this point, Kreiser threw the beer that he had just purchased at the victim, then ran at him and attempted to hit him. *Id.* at 331-332. The scuffle then moved across the porches and eventually ended with Kreiser dusting himself off and the victim starting to get up. *Id.* at 334. Kreiser stated that as he was getting up, he heard gunshots and saw Colon shoot the victim. *Id.* at 336. Kreiser fled the scene but spoke to Colon a few days later, at which time Colon told him that "he [Colon] would take the rap for this because that's the type of man he is." *Id.* at 344. Harrison and Cordovez stated that only Colon was on or near the porch when the victim was shot. *Id.* at 282, 436.

Investigator Perkins also took a statement from Colon after he was brought to the police station and read his Miranda warnings. Colon stated that the other individuals went up the street first before Colon did. *Id.* at 652. Colon denied wearing a gray hooded sweatshirt that day, *Id.* at 657, but he admitted leaving for New York soon after the incident. *Id.* at 654. Colon did not testify during trial.

An autopsy showed that the victim died from two gunshot wounds which entered from his right side, perforated his lung and lodged in his spinal vertebrae. *Id.* at 572-573. A trained firearms expert, Corporal

Garrett, examined the two bullets removed from the victim's body and testified that they were fired from the same firearm. *Id.* at 185.

Colon's DNA was found on the gray, hooded sweatshirt recovered at the crime scene. *Id.* at 564. Colon's DNA was not found on the hat recovered at the crime scene; only the victim's DNA was on that item. *Id.* at 565.

During his investigation, Investigator Perkins received a letter seized from a laundry bag at the Berks County Prison. *Id.* at 705-706. The letter stated that "they hitting me with murder 1 + 3", referred to Harrison's and Kreiser's cooperation with the police, stated where to find them, and instructed that "they gotta go." *Id.* at 606; *see also* Exhibit C-38 (note stating "I think that nigga Gun Play dropped a statement for sure," "they don't got da gun or none of dat[,] just these niggas giving up tape on me," "tell these niggas out there to get on these niggers tops[.] But H and Gun Play gotta go, no if, ands or buts about it, fam, they gotta go"). The letter was removed from the pocket of a shirt which was inside a color-coded laundry bag that belonged to cell J-212, and a tag on the bag had the word "Gutter" written on it. *Id.* at 590. "Gutter" is a known nickname for Colon. *Id.* at 278. At the time the letter was found, Colon was incarcerated at the Berks County Prison in cell J-212. *Id.* at 604.

Lastly, Investigator Perkins was able to ascertain through the use of the Pennsylvania State Police records check that Colon did not have a license

to carry a concealed firearm because he was ineligible to have one. *Id.* at 659. At trial, Colon stipulated to the fact that he does not have a permit to carry a concealed firearm. *Id.* at 661.

To prove first degree murder, the Commonwealth must introduce evidence which establishes beyond a reasonable doubt that a human being was unlawfully killed, the accused bears responsibility for the killing, and the accused acted with malice and a specific intent to kill. *Commonwealth v. Briggs*, 12 A.3d 291 (Pa.2011); 18 Pa.C.S. §§ 2501, 2502(a). An intentional killing is a "[k]illing by means of poison, or by lying in wait, or by any other kind of willful, deliberate, and premeditated killing." 18 Pa.C.S. § 2502(d). The Commonwealth may prove intent through wholly circumstantial evidence, such as evidence showing the use of a deadly weapon by the accused on a vital part of the victim's body. *Briggs*, 12 A.3d at 306. Likewise, malice may be inferred from the use of a deadly weapon on a vital portion of the victim's body. *Id*. at 307. The definition of a deadly weapon includes "[a]ny firearm, whether loaded or unloaded." 18 Pa.C.S. §2301; *Commonwealth v. Scott*, 752 A.2d 871, 874 (Pa.2000).

At the outset, we note that Colon waived his challenge to the sufficiency of the evidence relating to first degree murder. Without any citation to the record, Colon argues that "the only evidence in the Commonwealth's case in chief that could arguably establish the Defendant's guilt, comes from [three] biased individuals with the greatest motive and

reason to lie about the shooting to implicate another." Brief For Appellant, p. 24. Colon, however, fails to identify specific instances of lying by Commonwealth witnesses. Absent pertinent citations to the record, Colon has waived this argument. ***Commonwealth v. Johnson***, 985 A.2d 915, 924 (2009) (appellant waived issue on appeal where he failed to present claim with citations to relevant authority or develop issue in meaningful fashion capable of review).

Even if Colon preserved this argument for appeal, the evidence, viewed in the light most favorable to the Commonwealth as verdict winner, clearly establishes Colon's guilt. The evidence establishes that Colon shot Billups multiple times. An autopsy determined that the cause of death was a gunshot wound to Billups' chest than perforated his lung and lodged in his vertebrae. In addition to eyewitness testimony identifying Colon as the lone gunman, ballistics testing confirmed that only one firearm was used in Billups' murder. Gore's testimony established that prior to the shooting, Colon yelled at the victim that he had "the hammer," and Billups fled into Gore's house after hearing this. Substantial post-event circumstantial evidence points towards Colon as having killed Billups. Colon told Kreiser that he, Colon, would "take the rap" for the murder. Colon also gave a statement to Investigator Perkins which contradicted the undisputed video evidence as well as the testimony of all of the other witnesses, showing his attempt to mislead the police from his own guilt. In addition, the letter

retrieved from Colon's prison laundry shows that he intended to dispose of the witnesses against him, evidencing his consciousness of guilt.

Contrary to Colon's argument, the evidence against him did not consist only of testimony from allegedly biased eyewitnesses. Much of the evidence was forensic in nature, and other evidence came from sources other than the eyewitnesses, such as the letter found in Colon's prison laundry. And while Colon might be skeptical about the eyewitnesses' veracity, we must construe all evidence of record, including their testimony, in the light most favorable to the Commonwealth. Under this standard, the evidence of first degree murder plainly was sufficient.[9]

The evidence also was sufficient to prove Colon's guilt for PIC and carrying firearms with a license. PIC requires proof beyond a reasonable doubt that he possessed an instrument of crime with intent to employ it criminally. 18 Pa.C.S. § 907(a). Section 907(d) defines an instrument of crime as "anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." Viewed in the light most favorable to the Commonwealth, the eyewitness testimony and the recovered spent shell casings establish Colon's possession

_____

[9] We need not consider whether there was sufficient evidence of third degree murder and aggravated assault, because these crimes merged with Colon's sentence for first degree murder.

of an instrument of crime for criminal purposes and his intent to employ it criminally under circumstances not manifestly appropriate for any lawful use.

The crime of carrying firearms without a license requires the Commonwealth to prove that the defendant carried a firearm in any vehicle or carried a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license. 18 Pa.C.S. § 6106(a). Construed in the light most favorable to the Commonwealth, the evidence demonstrates that Colon possessed a firearm that he used to shoot Colon. Criminal Investigator Perkins confirmed, and Colon stipulated, that Colon did not have a license to carry a concealed weapon.

We next address Colon's argument that the trial court abused its discretion by permitting the admission of the letter found in a laundry bag that belonged to Colon's cell at the county prison. The letter directed that two trial witnesses against Colon "gotta go", which the Commonwealth contended was an order to kill the witnesses. Defense counsel objected to admission of the letter due to alleged lack of authentication, but the trial court overruled this objection. N.T. 601-02, 605.

Questions relating to the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Commonwealth v. Boczkowski*, 846 A.2d 75, 93 (Pa.2004). An abuse of discretion is not merely an error of

judgment; discretion is abused when the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record. *Commonwealth v. Snyder*, 870 A.2d 336, 343 (Pa.Super.2005).

Pa.R.E. 901 provides: "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). Rule 901 further provides in relevant part: "The following are examples only--not a complete list--of evidence that satisfies the requirement: … (4) The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Pa.R.E. 901(b). Thus, "a document may be authenticated by circumstantial evidence, a practice which has been uniformly recognized as permissible." *Commonwealth v. Brooks*, 508 A.2d 316, 318 (Pa.Super.1986). Thus,

> 'proof of any circumstances which will support a finding that the writing is genuine will suffice to authenticate the writing.' *McCormick, Evidence,* § 222. The courts of this Commonwealth have demonstrated the wide variety of types of circumstantial evidence that will enable a proponent to authenticate a writing. *See e.g., Commonwealth v. Nolly,* [] 138 A. 836 (1927) (letters authenticated by contents: facts known only to sender and recipient); *Commonwealth v. Bassi,* [] 130 A. 311 (Pa.1925) (unsigned letter authenticated by defendant's nickname written on it, along with contents indicating knowledge of matters familiar to both defendant-sender and witness-

- 13 -

recipient); *McFarland v. McFarland*, [] 107 A.2d 615, 616 (Pa.Super.1954) (authentication by writer's style and diction); *Commonwealth v. Gold*, [] 186 A. 208, 211 (Pa.1936) (dicta) (circumstantial evidence authenticating telephone call by recipient's subsequent actions would have sufficed to identify cablegram if offered); *Campbell v. Wade*, 83 Pa.Super. 415, 418 (1924) (purported author's subsequent keeping of appointment arranged in letter sufficient to authenticate).

*Brooks*, 508 A.2d at 319; *see also Bassi*, 130 A. at 311-12 (memorandum book authenticated by its discovery in a place connected to a party; book was found in bag in room defendant had occupied with three other men and contained diagram or sketch showing location of towns and highways in vicinity of robbery).

"The ultimate determination of authenticity is for the jury. A proponent of a document need only present a prima facie case of *some* evidence of genuineness in order to put the issue of authenticity before the factfinders." *Brooks*, 508 A.2d at 320. "The court makes the preliminary determination of whether or not a *prima facie* case exists to warrant its submission to the finders of fact." *Id*.

The record provides ample circumstantial evidence of the letter's authenticity. The letter was discovered in a laundry bag that belonged to Colon's prison cell. Attached to the laundry bag was a tag inscribed with Colon's nickname, Gutter. The letter referred to matters familiar to Colon, including the murder charges against him, Harrison's and Kreiser's cooperation with the police ("giving up tape on me"), and the fact that the

police did not have the gun. The trial court thus acted within its discretion by finding *prima facie* evidence of the letter's authenticity and submitting it to the jury for consideration.

In his next argument, Colon alleges a violation of his Fifth, Sixth and Fourteenth Amendment rights because the trial court permitted Investigator Perkins "to testify from a police report that was being used as substantive evidence regarding alleged false statements made by [Colon], where [Colon] was not shown the police report, said police report was not adopted by [Colon] and the report was not a verbatim recording of [Colon]'s statement to Perkins." Brief For Appellant, p. 25. Colon fails to explain why this ruling violated Colon's Fifth, Sixth or Fourteenth Amendment rights. His brief merely argues that this testimony violated Pennsylvania's evidentiary law concerning prior inconsistent statements. *Id*. (citing **Commonwealth v. Lively**, 610 A.2d 7 (Pa.1992)). Thus, Colon has waived this argument. **See Johnson**, 985 A.2d at 924 (argument waived where appellant fails to develop issue in meaningful fashion capable of review).

We review Colon's fourth and fifth arguments together, because they concern the same subject matter. Colon asserts that the trial court should have granted a mistrial based on two questions by the prosecutor to Investigator Perkins that referred improperly to Colon's pre-arrest silence. The prosecutor's first question was: "Did [Colon] come in to see you voluntarily?" Investigator Perkins answered: "No." N.T. 634. Trial counsel

objected to this question and moved for a mistrial. *Id*. Although the trial court did not decide the motion for mistrial on the record, it implicitly denied this motion by proceeding with trial the following day. The second question took place at the resumption of trial the following day. The prosecutor asked: "And can you tell us, Investigator Perkins, did [Colon] come into City Hall or to the Reading Police Department as the other individuals whom you interviewed did?" Investigator Perkins answered, "No, he didn't."[10] *Id*. at 649. The trial court later stated in its Pa.R.A.P. 1925 opinion that the prosecutor's comments were "inflammatory" but "did not rise to the level which would necessitate a mistrial." Trial Court Opinion, pp. 6, 7.

For purposes of this appeal, we will assume that the prosecutor engaged in misconduct by referring to Colon's pre-arrest silence through questions to Investigator Perkins about whether Colon came to the police station voluntarily. *Commonwealth v. DiNicola*, 751 A.2d 197, 201 (Pa.Super.2000) (defendant's pre-arrest silence may not be admitted into evidence when defendant does not testify at his own trial). We conclude, however, that this conduct does not require a new trial.

---

[10] Although Colon did not renew his request for a mistrial after the second question, renewal was unnecessary. *Cf*. *Schwegel v. Goldberg*, 228 A.2d 405, 408 (Pa.Super.1967) (where litigant objected to original question, but did not renew his objection after answer, judge's action in admitting testimony was ruling adverse to litigant, and such ruling obviated need for taking additional exception).

We evaluate prosecutorial misconduct under a harmless error standard. *Commonwealth v. Judy*, 978 A.2d 1015, 1020 (Pa.Super.2009). "In reviewing prosecutorial remarks to determine their prejudicial quality, comments cannot be viewed in isolation but, rather, must be considered in the context in which they were made." *Id*. Our review of prosecutorial misconduct requires us to evaluate whether a defendant "received a fair trial, not a perfect trial." *Id*. The remedy of a mistrial is an extreme remedy required only when one or more incidents of prosecutorial misconduct are "of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal." *Id*. But where properly admitted evidence of guilt "is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict, then the error is harmless beyond a reasonable doubt." *Commonwealth v. Miles*, 681 A.2d 1295, 1302 (Pa.1996).

Here, multiple eyewitnesses testified that Colon shot the victim during a brawl that began after Colon and other males challenged the victim to come outside of Gore's house and fight. The victim died from two gunshot wounds. Colon fled to New York after the shooting. Subsequently, following his arrest, he wrote a letter demanding the murders of two individuals who were cooperating with the Commonwealth against him. Given this overwhelming evidence of guilt, the prosecutor's two isolated questions on

two separate days to Investigator Perkins did not have the unavoidable effect of depriving Colon of a fair and impartial jury.

For these reasons, we affirm Colon's judgment of sentence.

Judgment of sentence affirmed.

President Judge Emeritus Bender joins in the memorandum.

Judge Strassburger concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/18/2015