508 A.2d 316

**COMMONWEALTH of Pennsylvania**

v.

**Walter BROOKS, Appellant.**

Superior Court of Pennsylvania.

Submitted April 16, 1985.

Filed April 21, 1986.

396

Robert A. Hoffa, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WICKERSHAM, BECK and CERCONE, JJ.

BECK, Judge:

Appellant Walter Brooks was convicted at jury trial of robbery, burglary, aggravated assault, and criminal conspiracy. Post-verdict motions were denied, and appellant was sentenced to terms of imprisonment totalling 25 to 50 years. This is a direct appeal from the judgment of sentence.

Appellant Brooks raises three issues for our review: (1) whether, due to a lack of proper authentication, the trial court erred in admitting into evidence two Commonwealth exhibits, an envelope and a letter; (2) whether the trial court erred in denying appellant's motion for a mistrial; and (3) whether the evidence was sufficient to support the verdict.

Appellant Brooks and co-conspirator Mervin Fortune were arrested in connection with the robbery and beating of an elderly couple in their home. Fortune pleaded guilty and agreed to testify on behalf of the Commonwealth in return for a promise that the Commonwealth would notify the

sentencing court of his cooperation. At Brooks's trial Fortune testified about the crime in which Fortune, Brooks, and another co-conspirator were involved. In addition, he testified that while he and Brooks were in jail they exchanged a number of letters and that one of the letters he received was threatening. The letter (Commonwealth Exhibit C–2) and the envelope in which it was delivered (Commonwealth Exhibit C–3) were admitted into evidence. Brooks challenges the admission of these exhibits.

■■■ First we note that the envelope was properly admitted. Brooks admitted by stipulation that he had addressed the envelope. Authentication of a writing is not required if the adversary has admitted its genuineness in open court or in his pleadings. *Osborne v. Victor Dairies, Inc.*, 138 Pa.Super. 117, 123, 10 A.2d 129 (1940); McCormick, *Evidence* § 219 and § 262 at 630 (E. Cleary 2d Ed. 1972). Thus, the envelope was properly admitted into evidence by virtue of Brooks's stipulation that he had addressed it.

Brooks also maintains that admission of the letter into evidence was error because the letter was admitted without proper authentication. We disagree, and conclude that authentication of the letter was sufficient for admission.

■■■ Generally, two requirements must be satisfied for a document to be admissible: it must be authenticated and it must be relevant. In other words, a proponent must show that the document is what it purports to be and that it relates to an issue or issues in the truth determining process. Specific evidentiary rules have developed for authenticating writings such as letters. These rules are necessary because of the problems involved in ascertaining the authorship of documents. As one commentator notes, "[m]ost documents bear a signature, or otherwise purport on their face to be of a certain person's authorship." 7 Wigmore, *Evidence* § 2130 at 709 (Chadbourn rev. 1978). It would be too easy to assume that a letter bearing the signature of "X" was authored by "X". In order that such

an unsupported assumption not be the foundation of authentication, the requirement for admission of a document such as a letter is a prima facie case that the document is what it purports to be.[1] The purpose of this rule is to provide a necessary check against fraud or mistake. *Commonwealth v. Harrison,* 290 Pa.Super. 389, 396, 434 A.2d 808, 812 (1981). *See also United States v. Sutton,* 426 F.2d 1202, 1206 (D.C.Cir.1969); McCormick, *Evidence, supra,* § 219 at 687.

Of course, authentication does not necessarily end the inquiry as to admissibility. Making the prima facie showing that the document is what it purports to be does not automatically lead to the conclusion that the document is relevant to an issue or issues in the case. *See* K. Broun, *Authentication and Contents of Writings,* 1969 Law and Social Order 611, 631; Fed.R.Evid. 901(b) advisory committee note.

■ A document may be authenticated by direct proof, such as the testimony of a witness who saw the author sign the document, acknowledgment of execution by the signer, admission of authenticity by an adverse party, or proof that the document or its signature is in the purported author's handwriting. *See* McCormick, *Evidence, supra,* §§ 219–221. No direct evidence to authenticate the letter was offered in the case *sub judice.*

■ A document may also be authenticated by circumstantial evidence, a practice which has been uniformly recognized as permissible. *See Sutton,* 426 F.2d at 1206; *United States v. Sinclair,* 433 F.Supp. 1180, 1195–96 (D.Del.1977), *aff'd* 566 F.2d 1171 (3d Cir.1977); McCormick, *Evidence, supra,* § 222; Wigmore, *Evidence, supra,*

---

1. Certain kinds of writings are said to "prove themselves" or to be "self-authenticating" and will be received in evidence without further proof of genuineness. These include acknowledged writings, public records, and, under the federal rules, official publications and certain other published writings. *See* Fed.R.Evid. 902; McCormick, *Evidence, supra,* § 228 at 700–01. A letter is not of this category.

§ 2131. *See also Sigfried v. Levan,* 6 Serg. & Rawle 308 (1820).

Certain recurrent patterns of circumstantial evidence have come to be recognized as distinct rules. These include: *the ancient documents rule,* which exempts documents from other authentication when the document is at least 30 years old, is free from suspicious alterations, and has been in proper custody, *Louden v. Apollo Gas Co.,* 273 Pa.Super. 549, 553, 417 A.2d 1185, 1187 (1980); *the reply letter doctrine,* which regards evidence that a letter came by mail and corresponds in time and contents to a prior letter sent to the purported author as sufficient authentication, *Eichenhofer v. City of Philadelphia,* 248 Pa. 365, 93 A. 1065 (1915); and *the Uniform Business Records As Evidence Act,* 42 Pa.C.S.A. § 6108, under which a document is authenticated if a witness testifies as to preparation and maintenance of the records, *In re Indyk's Estate,* 488 Pa. 567, 571, 413 A.2d 371, 373 (1979).

Nonetheless, authentication by circumstantial evidence is not limited to situations which fall within the three categories mentioned above. Instead, "proof of any circumstances which will support a finding that the writing is genuine will suffice to authenticate the writing." *McCormick, Evidence, supra,* § 222. The courts of this Commonwealth have demonstrated the wide variety of types of circumstantial evidence that will enable a proponent to authenticate a writing. *See e.g., Commonwealth v. Nolly,* 290 Pa. 271, 138 A. 836 (1927) (letters authenticated by contents: facts known only to sender and recipient); *Commonwealth v. Bassi,* 284 Pa. 81, 83, 130 A. 311 (1925) (unsigned letter authenticated by defendant's nickname written on it, along with contents indicating knowledge of matters familiar to both defendant-sender and witness-recipient); *McFarland v. McFarland,* 176 Pa.Super. 342, 345, 107 A.2d 615, 616, *allocatur refused* (1954) (authentication by writer's style and diction); *Commonwealth v. Gold,* 123 Pa.Super. 128, 135–36, 186 A. 208, 211 (1936) (dicta) (circumstantial evidence authenticating telephone call by recipient's subse-

quent actions would have sufficed to identify cablegram if offered); *Campbell v. Wade,* 83 Pa.Super. 415, 418 (1924) (purported author's subsequent keeping of appointment arranged in letter sufficient to authenticate).

Moreover, we note that the approach of the Federal Rules of Evidence towards authentication by circumstantial evidence parallels that of Pennsylvania. Fed.R.Evid. 901(b) lists several illustrations of allowable circumstantial evidence of authenticity, and the Advisory Committee's Note indicates that the illustrations are "not intended as an exclusive enumeration of allowable methods." Illustration (4) to Fed.R.Evid. 901(b) is particularly noteworthy. It provides for authentication by "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics taken in conjunction with circumstances."

Federal cases also allow a broad range of circumstantial evidence of authenticity. *See e.g. In re Japanese Electronic Products Litigation,* 723 F.2d 238, 286–87 (3d Cir.1983), reversed on other grounds *sub nom. Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* — U.S. —, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (totality of circumstances, especially fact that documents obtained from defendants in course of litigation, sufficient to support a finding that documents were what profferor claimed them to be); *United States v. Goichman,* 547 F.2d 778, 784 (3d Cir.1976) (document authenticated by recordation in prior proceeding, reference to writer's children by name, and other corroboration); *Sutton,* 426 F.2d at 1208 (documents found near murder victim authenticated by envelope with defendant's name as addressor and close relations as addressees and by content of notes implying involvement in love triangle); *Sinclair,* 433 F.Supp. at 1196 (document authenticated by letterhead containing defendant's name, contents referring to recent conversation with addressee and agreement on proposed course of action, and subsequent discussion between defendant and addressee based on document).

■ Clearly then, a writing can be authenticated by circumstantial evidence that may take a number of forms, and

that tends to show that the writing is what it purports to be. As the above-cited cases indicate, such evidence may, depending upon the facts at issue, include proof of: the timing and method of delivery of the document, information in the contents of the writing that is known by the purported sender and the recipient, events preceding or following the execution or delivery of the writing, other communications by the purported sender prior to or following the execution or delivery of the document, the appearance of the purported sender's name or letterhead on the document, the handwriting technique, or the style of expression used in the language of the writing.

■ We note that the ultimate determination of authenticity is for the jury. A proponent of a document need only present a prima facie case of *some* evidence of genuineness in order to put the issue of authenticity before the factfinders. *See e.g., Nolly,* 290 Pa. at 274, 138 A. at 837 (signature of defendant's fictitous name, and contents of letters sufficient to justify their admission; jury to consider weight); *Stahl v. Berger,* 10 Serg. & Rawle 169, 170 (1823) (witness's testimony concerning circumstances of execution of document enough evidence to place issue of execution before jury); *Sigfried v. Levan,* 6 Serg. & Rawle 308 (1820).

■ The court makes the preliminary determination of whether or not a prima facie case exists to warrant its submission to the finders of fact, *Brenner v. Lesher,* 332 Pa. 522, 524, 2 A.2d 731, 733 (1938), but the jury itself considers the evidence and weighs it against that offered by the opposing party:

> All that is done by the Court ... is this, that if the execution of the deed is proved ... the party has made out a "prima facie" case, not a conclusive one ... and these facts are submitted to the jury to exercise their own judgment .... *[I]t is admitted* not because the Court draw any conclusion but *because some evidence is offered from which the jury might presume [i.e. infer] the fact in issue.... [I]f there be any fact or circumstance*

*tending to prove the execution* ... it is open for the decision of the jury.

Wigmore, *Evidence, supra,* § 2135 (quoting *Sigfried v. Levan,* 6 Serg. & Rawle 308, 311 (Pa.1820)) (emphasis added). *See e.g. Harrison,* 290 Pa.Super. at 398 n. 2, 434 A.2d at 813 n. 2 (evidence of circumstances implicating reply letter doctrine would have been sufficient to present question of authenticity to jury).

The federal rule relating to the functions of the judge and the jury and the standard of proof required to submit the authenticity issue to the factfinder comports with the analysis used in Pennsylvania.[2] The policy underlying Fed.R.Ev. 901(a) has been explained as follows:

> *This rule* does not ignore or repudiate the policy justifications for the authentication requirement. It *simply recognizes that where the question is one of probative force or credibility—as it necessarily always is with questions of authenticity and identity—the jury is as competent as the court.* The jury is constituted expressly for the purpose of applying common sense and community mores to disputed issues of fact where the principal question is almost always one of credibility. In Rule ... 901(a) *the court is told to admit where a reasonable juror might find for the proponent* on the issue of relevancy. In deciding whether to admit, issues of credibility are decided in favor of the proponent.

5 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 901(a)[02] at 901–22 (1983) (footnotes omitted) (emphasis added). *See also* McCormick, *Evidence, supra,* § 227.

Federal case law lends support to the approach we find articulated by our own courts. In order to authenticate a writing, the proponent need only establish a foundation, a prima facie showing, of some evidence from which the factfinder could legitimately infer that the document is

---

**2.** Federal Rule of Evidence 901(a) states:
The requirement of authentication ... as a condition precedent to admission is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

what the proponent asserts it to be. *See e.g. In re Fine Paper Antitrust Litigation*, 751 F.2d 562, 586 (3d Cir.1984); *In re Japanese Products Antitrust Litigation*, 723 F.2d at 286 (source, contents and appearance of documents sufficient to authenticate); *Goichman*, 547 F.2d at 784 (evidence that document recorded in prior proceeding and contents of document sufficient to establish prima facie showing of authenticity).

As we have already discussed, the foundation may consist of circumstantial evidence and may include factors relating to the contents of the writing and the events before and after the execution of the writing. Each case must be decided on its facts. The mere presence of the purported writer's name on a document will not be sufficient, but other circumstantial factors, taken singly or in concert, will be sufficient proof of authenticity that a judge may admit a document into evidence if those facts support a legitimate inference that the writing is what it purports to be.

■ The facts in this case more than adequately support the trial court's finding of a prima facie showing of the letter's authenticity. The writing was therefore properly admitted into evidence.

Appellant was connected to the threatening letter by several types of circumstantial evidence which suggested that he sent it to the witness, the co-perpetrator of the crime, Mervin Fortune. To begin with, Fortune testified that this was the letter contained in the envelope that the appellant admits having addressed. (N.T. 5/26/83 at 49–50). In addition, the letter on its face demonstrates a connection to the appellant: appellant's name appears at the top and at the bottom of the page, and the letter starts and ends with the appellation "Buddy" that Fortune and the appellant used in their correspondence with each other. (Commonwealth Exhibit C–3; Commonwealth Exhibit C–8; Defense Exhibit D–2). *See, e.g., Nolly*, 290 Pa. at 271, 138 A. at 836; *Bassi*, 284 Pa. at 81, 130 A. at 311.

The contents of the letter also connect it to the appellant. The writer threatens Fortune's girlfriend Veronica and his child, and refers to Veronica by her nickname, "Ron-Ron." The use of the nickname implies that the writer was someone who, like the appellant, knew Fortune and the people in Fortune's life fairly well. (N.T. 5/26/83 at 8–9). Moreover, the letter refers to a prior conversation the writer had with Fortune concerning Veronica's statement to the police which had implicated both the appellant and Fortune in the crime: "have you been thinking about what I told you to do as far is [sic] this case is concerned.... Did you tell [Ron-Ron] she had better get that statement straight...." The appellant would be likely to know of the incriminating statement, and, like the author of the letter, had an interest in the outcome of the criminal proceedings to which the statement related. Thus, the contents of the document also provide circumstantial evidence of a connection with the appellant. *See e.g. Nolly,* 290 Pa. at 271, 138 A. at 836; *Bassi,* 284 Pa. at 81, 130 A. at 311. *See also Goichman,* 547 F.2d at 778; *Sinclair,* 433 F.Supp. at 1180.

Finally, events preceding and subsequent to the letter in question corroborate Fortune's testimony and imply an association between the writing and the appellant. A draft statement composed by Fortune in which Veronica would recant her prior statement implicating Fortune and Brooks was introduced into evidence. Although Fortune testified that he prepared the statement before receiving the threatening letter, he also testified that he wrote the statement at the appellant's request. (N.T. 5/26/83 at 103). The jury could have believed that the statement was evidence of a prior implied or oral threat that was later confirmed by the threatening letter. *See, e.g., Sinclair,* 433 F.Supp. at 1180 (authentication by contents referring to recent conversation).

Additionally, several subsequent letters between Fortune and appellant which discussed their testimony and the status of "our case" were admitted. (Commonwealth Exhibits C–7, C–8, C–9B). The jury could reasonably have inferred

that the letter in question was part of this ongoing correspondence concerning the criminal proceedings in which both the appellant and Fortune were involved. *See, e.g., Sutton,* 426 F.2d at 1208.

The trial judge was correct in concluding that the letter was admissible. The totality of the circumstances in this case constitute a prima facie showing that the letter is what it purports to be: a letter from appellant Brooks to Fortune.

■ Since we conclude that the letter was duly authenticated, we next address the question of whether the letter is relevant. We conclude that it is. The letter relates to an issue in the truth determining process; i.e. the guilt or innocence of appellant. The letter bears directly on this question and suggests that the writer was attempting to hide his involvement in the crime by compelling a witness to change her testimony. Accordingly, we hold that the trial court did not err in admitting the letter.

■ On appellant's second issue, we hold that the trial court did not err in denying appellant's motion for a mistrial. Pa.R.Crim.P. 118(b) requires that in order to be timely, a motion for a mistrial shall be made when the allegedly prejudicial event occurs. Appellant's trial counsel initially objected but then withdrew that objection when the court gave a curative instruction, stating that his concerns had been satisfied (N.T. May 26, 1983, 80–85). Counsel's subsequent motion for mistrial was thus untimely, precluding it as a basis for appeal. *Commonwealth v. Randolph,* 280 Pa.Super. 189, 190–92, 421 A.2d 469, 470–71 (1980). Additionally, any prejudice to the appellant arising from the witness' response was cured by the cautionary instruction.

After carefully reviewing the briefs, the record, and the trial court's opinion, we also reject appellant's third claim, insufficiency of evidence. The trial court discussed this claim in careful detail in its opinion denying post-verdict motions. We agree with the trial court's well-reasoned determination that, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner below, more than ample evidence existed to sustain the jury's

verdict. *Commonwealth v. Hudson,* 489 Pa. 620, 414 A.2d 1381 (1980).

Judgment of sentence affirmed.