AND NOW, this 30th day of July, 1997, the order of the Commonwealth Court is hereby affirmed.

John Phillip **STOTZ**, Appellant,

v.

Margaret **SHIELDS**.

Superior Court of Pennsylvania.

Argued Nov. 13, 1996.
Filed May 27, 1997.

Anthony Sottile, Indiana, for appellant.

Wayne A. Kablack, Indiana, for appellee.

Before HUDOCK, FORD ELLIOTT and HESTER, JJ.

HESTER, Judge:

John Phillip Stotz appeals from the judgment entered in the Court of Common Pleas of Indiana County on May 13, 1996, after a jury rendered a verdict of $18,750 in his favor. For the reasons set forth below, we are constrained to reverse and to remand for a new trial.

The procedural history of this case may be summarized as follows. On October 2, 1992, after commencing the action by writ of summons, appellant filed a complaint against Margaret Shields which sought damages arising from an automobile accident. Twelve days later, Ms. Shields answered the complaint by admitting negligence, denying appellant's allegations regarding damages, and setting forth numerous defenses. In the years that followed, the parties engaged in extensive litigation over the admissibility of certain evidence including testimony by army physician Lee A. Pietrangelo and documents which both contained Dr. Pietrangelo's medical opinions and indicated that appellant's post-accident discharge from the Ohio National Guard was medical in nature. The trial court ultimately ruled that the challenged evidence was inadmissible since the doctor apparently had never examined appellant or reviewed reports submitted by appellant's private physicians.

Trial on the matter commenced on February 20, 1996. During the course of that proceeding, appellant presented evidence which established the following. On June 7,

1992, a vehicle driven by Ms. Shields struck appellant. Although appellant tried to avoid injury by jumping onto the hood, he was pinned against a church building. He sustained a fractured left ankle, two fractures of his right foot, and two dislocated right toes. Although appellant spent several weeks in casts and has attempted to rebuild his strength gradually, he continues to have persistent and debilitating left ankle pain. According to Dr. Paul Burton, appellant suffers from post-traumatic arthritis and his condition may never improve.

Although he had been fairly active prior to the accident, appellant's ankle pain has affected his ability to engage in sports adversely. Several months after the accident, appellant, who knew that he could not complete the necessary two-mile run, failed to take the annual physical fitness test required of all National Guard members. Consequently, appellant was subjected to a mandatory physical examination which led to his involuntary discharge from the service. As he had served in excess of two years in the military before sustaining his injuries,[1] appellant focused much of his claim for damages on benefits lost as a result of the discharge including tuition assistance, loan repayment subsidies, pay for time that he would have spent on duty, and the pension which would have been available to him after twenty years of service. Employment rehabilitation expert Jay Jarrell valued the lost service benefits and other economic damages sustained by appellant at in excess of $180,000.

Ms. Shields attempted to impeach appellant by asking him whether he had sought permission to take an alternate fitness test. Appellant, who objected to this line of questioning on the ground that it was unsupported by the necessary evidentiary foundation, indicated that he was not aware that an alternate fitness test existed. *See* Notes of Testimony ("N.T."), 2/20–21/96, at 86–89. Later, despite another foundational objection, the trial court admitted four photocopied pages which set forth matters relating to the physical fitness test and to an alternate

testing procedure. *Id.* at 116–20. Finally, Ms. Shields attempted to counter appellant's medical evidence by presenting Dr. W. Scott Nettrour, an orthopedic surgeon, who testified that he examined appellant and could find no physical support for appellant's complaints of pain.

On February 21, 1996, the jurors rendered the described verdict. Later, after the trial court denied his requests for post-trial relief, appellant filed a praecipe for the entrance of judgment. This timely appeal followed the entry of judgment pursuant to that praecipe.

■ Appellant raises several evidentiary claims related to the admission of the documentation evidencing the alternate fitness test and to the exclusion of both the testimony of Dr. Pietrangelo and the materials indicating the medical nature of National Guard discharge. Keeping in mind that questions concerning the admission and exclusion of evidence are within the sound discretion of the trial court whose decisions thereon will not be disturbed in the absence of an abuse of discretion, *see Yankowsky v. Katz, Inc.*, 443 Pa.Super. 494, 662 A.2d 665 (1995), we consider the appropriateness of the former decision.

> Generally, two requirements must be satisfied for a document to be admissible: it must be authenticated and it must be relevant. In other words, a proponent must show that the document is what it purports to be and that it relates to an issue or issues in the truth determining process.

*Commonwealth v. Brooks*, 352 Pa.Super. 394, 397, 508 A.2d 316, 318 (1986); *see also Commonwealth v. Zook*, 532 Pa. 79, 615 A.2d 1 (1992). The establishment of those two requirements is known as laying a foundation. *See McCormick on Evidence* §§ 51, 218 (J. Strong 4th ed. 1992); Graham C. Lilly, *An Introduction to the Law of Evidence* 417–18 (1978).

In the present case, our review of the record demonstrates that appellant objected to the admission of the alternate fitness test

---

**1.** Appellant initially enlisted in the Army Reserves and later transferred to the Ohio National Guard.

materials on the basis that Ms. Shields had failed to present any foundational evidence.[2] Consequently, he clearly asserted in the trial court that Ms. Shields had neither authenticated that evidence nor demonstrated its relevance. While appellant now characterizes his argument as relating only to the issue of authentication, he questions the relevance of the materials by pointing out that no proof established they were in existence at the time that he was being evaluated or that they applied to him. *See* Appellant's brief at 28–29. We will address both aspects of appellant's claim.

■ Specific evidentiary rules relate to the authentication of documentary evidence. A document may be authenticated by direct evidence such as an admission. *See Commonwealth v. Brooks, supra.* A document also may be authenticated via circumstantial evidence relating to a myriad of considerations including its appearance, contents, and substance. *Id.* Acknowledged writings, public records, and under Federal Rule of Evidence 902, documents purporting to be issued by public authority, are self-authenticating. *Id.* Consequently, they are admissible into evidence without further proof of genuineness. *Id.*

■ As discussed previously, our review of the record reveals that appellant never admitted the authenticity of the contested materials and that Ms. Shields failed to introduce any foundational testimony regarding them. In addition, an examination of the contested materials demonstrates that they discuss army policy regarding physical fitness, the mandatory physical fitness test, and the availability of alternate test activities in the event that the soldier has either a temporary or permanent disability. While the materials cite to various regulations, they contain *no* indication that they were printed or issued by governmental authority. Thus, even if we assumed that the principle embodied in the federal rule permitting self-authentication of official publications reflects our law,[3] we would not find the contested materials self-authenticating. *See* 5 Christopher B. Muller and Laird C. Kirkpatrick, *Federal Evidence* § 543 (2d ed. 1994) (self-authentication rule regarding official publications does not apply to the reproduction of official pronouncements in the absence of an official nexus). Accordingly, we find that Ms. Shields failed to authenticate the contested evidence.

■ We also believe that Ms. Shields neglected to demonstrate that the evidence was relevant. Even if the materials in question actually set forth army regulations regarding physical fitness testing and the various alternative activities available for injured or disabled personnel, those regulations are relevant only to the extent that they existed at the time that appellant was being tested and were applicable to him. Since Ms. Shields presented no evidence regarding the materials, and appellant specifically denied any knowledge of the existence of an alternate testing procedure, the record is devoid of any evidence satisfying that basic issue.

■ As our analysis demonstrates, the trial court admitted the alternate testing evidence without requiring Ms. Shields to provide the requisite evidentiary foundation. In doing so, the court permitted Ms. Shields to circumvent our basic rules of evidence and thus, committed an abuse of discretion. Moreover, the court's erroneous *decision* to admit the contested evidence undoubtedly could have impacted upon the jurors' deter-

---

2. When discussing the contested evidence, Ms. Shields' counsel mentioned army regulations. *See* N.T., 2/20–21/96, at 116–17. While appellant's counsel used that characterization of the evidence in presenting his foundational objection in the trial court, *id.* at 117–20, neither he nor appellant ever actually admitted that they set forth army regulations. Furthermore, appellant pointedly notes in his argument that the contested materials are not contained in either the Code of Federal Regulations or army regulations. *See* Appellant's brief at 29.

3. We have found no authority supporting this proposition and note that Ms. Shields' citation to *Commonwealth v. Brooks, supra,* is misplaced. In *Brooks,* we discussed document authentication and indicated that the examples found in F.R.E. 901 of circumstantial evidence which could support authentication parallels Pennsylvania law on the subject. At no time did we indicate that all of the federal rules regarding authentication are embodied in Pennsylvania law or that the official publication rule of self-authentication, F.R.E 902(5), parallels our law.

mination as to appellant's ability to remain in the National Guard despite his ankle injury, a key issue in light of the fact that appellant's primary claim for damages concerned matters arising from his discharge. Accordingly, we are constrained to reverse the judgment and to remand the case for a new trial. In light of this decision, we need not address the remaining issues raised by appellant, which concern Ms. Shields' failure to disclose her intention to utilize the alternate testing materials in a timely fashion and the admissibility of certain evidence indicating that appellant's discharge was medical in nature.

Judgment reversed. Case remanded for a new trial. Jurisdiction relinquished.

