J-S58004-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANDRE TREMAINE CARRINGTON, | |
| Appellant | No. 507 WDA 2013 |

Appeal from the Judgment of Sentence October 11, 2012
in the Court of Common Pleas of Allegheny County
Criminal Division at Nos.: CP-02-CR-0002922-2011;
CP-02-CR-0009696-2012

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.: **FILED OCTOBER 14, 2014**

Appellant, Andre Tremaine Carrington, appeals from the judgment of sentence entered on October 11, 2012, following his jury conviction of murder in the first degree[1] and his *nolo contendere* plea to person not to possess firearms.[2] For the reasons discussed below, we affirm.

At trial, Cheri Bracey testified that, on October 13, 2008, her husband, Daniel Bracey, left home after midnight to sell CDs in the neighborhood. (*See* N.T. Trial, 7/26/12, at 183-84). Approximately five minutes later, she

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2502(a).

[2] 18 Pa.C.S.A. § 6105(a)(1).

heard gunshots and went outside; she saw an acquaintance, Eugene Wright, run by her coming from the direction of the shooting. (*See id.* at 187-90). She saw other people running, and two of them told her that her husband was dead. (*See id.* at 188, 190-91).

Eugene Wright, a.k.a Beans, testified that he and Zack Moore were sitting outside when Appellant, whom Wright knew as "Drizzy" approached them, holding a gun. (*Id.* at 209; *see id.* at 207, 209-11). The victim came up to them a few minutes later and said to Appellant that he "look[ed]. . . ready for war." (*Id.* at 213; *see id.* at 212-14). Appellant then shot and killed the victim. (*See id.*). Appellant then looked at Wright and said, "[a]re you cool?" (*Id.* at 214). Wright replied that he was cool and left the scene. (*See id.*). Wright testified that he did not tell the police about the incident until his own arrest by the FBI on an unrelated drug matter, one year later, because he was afraid of retaliation. (*See id.* at 215-17). Wright stated that he had not received a lighter sentence on his federal case and that no one had promised him anything in exchange for his testimony against Appellant.[3] (*See id.* at 220-21).

---

[3] We note, however, that both parties stipulated that the sentencing court in the federal case considered Wright's cooperation in this case, or the federal case, or both, and the trial court here noted that the jury could consider the stipulation as if there had been testimony to that effect. (*See id.* at 481-82).

Over the objection of defense counsel, Wright testified that, while in Allegheny County Jail, an inmate he knew as "Baby" passed him a note that read, "Yo, homie, this Drizzy. Man, I know you not gonna' let these people make you sink me. Make this shit right for me. They're trying to give me life. Get at me. My lawyer want to come see you. Give me the green light if you're cool. Respect." (*Id.* at 226-27).

A little more than two weeks after the shooting, Police Officer James Caterino observed a roof shingle sitting in a vacant lot; Officer Caterino moved the shingle and discovered two .40 caliber Glock pistols, one contained a magazine, the other did not. (*See* N.T. Trial, 7/27/12, at 268-71). Officer Caterino turned over the weapon to Detective Patrick Kinavey, who sent them to the Allegheny County Crime Lab for analysis. (*See id.* at 282-83). Firearms Expert, Thomas Morgan, testified that bullets recovered from the victim's body had been discharged from the Glock pistol that was missing a magazine. (*See id.* at 319-20).

Allegheny County Sheriff's Deputies located Appellant in an apartment owned by a female resident; the apartment was a short distance from the empty lot where Officer Caterino found the guns. (*See id.* at 280-81, 284-86). The deputies searched the apartment and discovered a .40 caliber ten-round magazine containing ten live rounds and a .40 caliber Smith & Wesson Winchester box containing three live rounds. (*See id.* at 281, 286). The recovered magazine fit the murder weapon. (*See id.* at 324).

Thomas Meyers, a DNA scientist with the Allegheny County Office of the Medical Examiner, testified that there was a "very strong association" between Appellant's DNA and DNA found on the murder weapon. (*Id.* at 386; *see id.* at 361-62). Meyers further testified that Appellant's DNA profile was consistent with the DNA found in the sample from the gun and that the probability that another African American could be the donor was one in one million. (*See id.* at 385-86).

On July 31, 2012, the jury found Appellant guilty of murder in the first degree. On October 11, 2012, Appellant pleaded *nolo contendere* to persons not to possess firearms. That same day, the court sentenced Appellant to life in prison for murder of the first degree, and a concurrent sentence of not less than five nor more than ten years' incarceration for persons not to possess firearms. Appellant filed a timely post-sentence motion on October 18, 2012, challenging the weight of the evidence. (*See* Post-Sentence Motion, 10/18/12, at unnumbered page 1). The trial court denied the motion on February 19, 2013. The instant, timely appeal followed.

On April 3, 2013, the trial court ordered Appellant to file a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). Following the grant of several extensions of time to file the Pa.R.A.P. 1925(b) statement, Appellant filed a timely statement on January 13, 2014. On January 30, 2014, the trial court issued an opinion. *See* Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following questions for our review:

I.  Did the trial court abuse its discretion by admitting an unauthenticated and highly prejudicial handwritten note to a witness?

II. Did the trial court abuse its discretion by finding that a guilty verdict was not against the weight of the evidence when the unreliable testimony of the eyewitness and the questionable DNA evidence were so untrustworthy that to base a verdict on this evidence was manifestly unreasonable?

(Appellant's Brief, at 6).

Appellant first claims that the trial court erred in admitting into evidence the handwritten note purportedly written by Appellant and sent to Eugene Wright. (**See** Appellant's Brief, at 20). Appellant argues that the note was not properly authenticated, was irrelevant, and was highly prejudicial. (**See id.** at 20-23). This Court has held that:

> [w]ith regard to evidentiary challenges, it is well established that [t]he admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Furthermore, if in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

 *Commonwealth v. Serrano*, 61 A.3d 279, 290 (Pa. Super. 2013) (citation and internal quotation marks omitted). For a document to be admissible, it must be authenticated and it must be relevant. *See Commonwealth v.*

*Brooks*, 508 A.2d 316, 318 (Pa. Super. 1986). With respect to authentication, Pennsylvania Rule of Evidence 901 provides in relevant part, as follows:

> **Rule 901. Authenticating or Identifying Evidence**
>
> (a) **In General.** To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.
>
> (b) **Examples.** The following are examples only--not a complete list--of evidence that satisfies the requirement:
>
> *       *       *
>
>  (4) *Distinctive Characteristics and the Like.* The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.

Pa.R.E. 901(a) and (b)(4). Further, it is long settled that a document may be authenticated by circumstantial evidence including "information in the contents of the writing that is known by the purported sender and the recipient . . . [and] the appearance of the purported sender's name or letterhead on a document." *Brooks*, *supra* at 320; *see also Commonwealth v. Zook*, 615 A.2d 1, 10 (Pa. 1992) (citing *Brooks* for the proposition that "[a] document may be authenticated by circumstantial evidence"). Further, "[w]e note that the ultimate determination of authenticity is for the jury. A proponent of a document need only present a *prima facie* case of **some** evidence of genuineness in order to put the issue

of authenticity before the factfinders." ***Brooks***, ***supra*** at 320 (emphasis in original).

In the instant matter, the record reflects that both Wright and Adam Carter, whom Wright testified gave him a handwritten note, were incarcerated in Pod 3 of the Allegheny County Jail. (***See*** N.T. Trial, 7/26/12, at 223; N.T. Trial, 7/30/12, at 463-64). The note claimed to be from "Drizzy" and both Wright and Detective Kinavey testified that this was Appellant's nickname. (N.T. Trial, 7/26/12, at 13-14, 209-10). Wright's given name was written on the outside of the note along with "Beans" which Wright testified was his nickname. (***Id.*** at 226-27). The note indicated that the author was facing a possible life sentence, as was Appellant, and sought Wright's aid in avoiding that fate. (***See id.*** at 227). Wright testified that he took the note to mean Appellant was telling him not to testify. (***See id.***).

In ***Commonwealth v. Collins***, 957 A.2d 237 (Pa. 2008), our Supreme Court held that a letter authored by a prisoner was properly authenticated where the letter was mailed from the prison where the prisoner was incarcerated, contained the prisoner's prison identification number, and contained subject matter—including addressing the recipient by his nickname—clearly indicating that the prisoner was the author. ***See id.*** at 265. We see no meaningful difference between ***Collins*** and the instant matter. Thus, the trial court did not abuse its discretion in holding that the Commonwealth properly authenticated the note.

- 7 -

Appellant also complains that the note was irrelevant and thus should not have been admitted. (*See* Appellant's Brief, at 27-28). We disagree. It is settled that the Commonwealth may introduce evidence of threats made to a witness or attempts to interfere with a witness's testimony to demonstrate the defendant's consciousness of guilt. *See Commonwealth v. Johnson*, 838 A.2d 663, 680 (Pa. 2003), *cert. denied*, 543 U.S. 1008 (2004). While Appellant contends that the note neither threatened Wright nor attempted to interfere with his testimony, (*see* Appellant's Brief, at 28), we disagree. The note clearly stated that Appellant wanted Wright to "[m]ake this shit right for me[,]" so that he could avoid a life sentence. (N.T. Trial, 7/26/12, at 227). This is sufficient to demonstrate the relevance of the testimony. *See Johnson*, *supra* at 680.

Appellant also avers that the note was unduly prejudicial. (*See* Appellant's Brief, at 29-30). We disagree. As discussed above, Wright testified that he saw Appellant shoot the victim. (*See* N.T. Trial, 7/26/12, at 212-14). The police found the murder weapon, and DNA evidence linked Appellant to that weapon. (*See* N.T. Trial, 7/30/12, at 361-62, 385-86). Given this, the trial court did not abuse its discretion in finding that the note was more probative than prejudicial. *See Commonwealth v. Reese*, 31 A.3d 708, 727 (Pa. Super. 2011) (finding evidence of threats made to a witness were properly admitted despite their potential prejudice).

In his second issue, Appellant argues that the verdict was against the weight of the evidence because Eugene Wright's testimony was "tenuous, self-serving, and incredible[.]" (Appellant's Brief, at 31). Our scope and standard of review of a weight of the evidence claim is as follows:

> The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.
>
> As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.
>
> Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Boyd*, 73 A.3d 1269, 1274-75 (Pa. Super. 2013) (*en banc*) (citation and internal quotation marks omitted). "Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Diggs*, 949 A.2d 873, 879-80 (Pa. 2008), *cert. denied*, 556 U.S. 1106 (2009) (citation omitted).

In its Rule 1925(a) opinion, the trial court explained why it rejected Appellant's weight of the evidence claim. (**See** Trial Ct. Op., at 2-3). We have thoroughly reviewed both the trial court's opinion and the record in this matter and conclude that the trial court did not commit a palpable abuse of discretion in rejecting Appellant's claim. Therefore, Appellant's weight of the evidence claim fails.

Because Appellant's claims are lacking in merit, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/14/2014