J-S22018-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MARK ALAN BARKLEY | : | |
| | : | |
| Appellant | : | No. 1001 WDA 2023 |

Appeal from the Judgment of Sentence Entered March 13, 2023
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0001210-2022

BEFORE: PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.: **FILED: September 13, 2024**

Mark Alan Barkley ("Barkley") appeals from the judgment of sentence imposed following his convictions for six counts of aggravated assault, three counts of endangering the welfare of children ("EWOC"), three counts of recklessly endangering another person ("REAP"), and two counts of simple assault.[1] We affirm.

On September 21, 2020, Barkley was at home with his newborn daughter, M.B. (born August 4, 2020), while M.B.'s mother, Hannah Kerestesi ("Kerestesi"), was at work. Barkley fed M.B., placed her in her bouncer chair, laid down next to the bouncer chair, and took a nap. According to Barkley, he awoke approximately three hours later to find M.B. non-responsive and not breathing. Barkley claimed that he tried to check her airway and began rubbing her chest, whereupon she began breathing but had a seizure. Barkley

---

[1] ***See*** 18 Pa.C.S.A. §§ 2702(a)(1), (8), (9), 4304(a)(1), 2705, 2701(a)(1).

called Kerestesi, who returned home, and the two of them took M.B. to the hospital. Upon her admission to the hospital, doctors determined that M.B. had a skull fracture and was suffering seizures. Further testing revealed that M.B. had multiple rib fractures, which were healing. MRI studies of M.B.'s brain revealed that she had experienced oxygen deprivation, potentially as a result of suffocation, and that she sustained severe and permanent brain damage.

Pennsylvania State Police Trooper Robert Schmid interviewed Barkley and Kerestesi, who were unable to satisfactorily explain M.B.'s injuries. Kerestesi related an incident which occurred while she was changing M.B.'s diaper on the bed and she rolled away, but Kerestesi did not believe that M.B. hit her head on the bed or sustained any injury. Kerestesi also recalled an incident when M.B.'s cheek hit the handle of her car seat when Kerestesi was removing her from the car. Barkley related an incident which occurred when he stumbled on the stairs while carrying M.B.

M.B. remained hospitalized and on October 26, 2020, approximately one month after her admission, Barkley was alone with her in her hospital room when she sustained a sublingual frenulum tear,[2] resulting in substantial bleeding. Barkley claimed that he was attempting to wipe away accumulated secretions from M.B.'s mouth. Barkley and Kerestesi both voluntarily

---

[2] The frenulum is a thin piece of tissue connecting the tongue to the floor of the mouth.

relinquished their parental rights to M.B. to Kerestesi's aunt, Tammi Pergola ("Pergola").

Police charged Barkley with eighteen counts, consisting of six counts for each of M.B.'s three separate injuries: skull fractures, rib fractures, and sublingual injury. For each injury, Barkley was charged with three counts of aggravated assault, and one count each of EWOC, REAP, and simple assault all alleged to have occurred on or about August 4, 2020. Police thereafter amended the criminal complaint to reflect that the skull and rib fractures occurred on or about September 21, 2020, and the sublingual injury occurred on or about October 26, 2020.[3]

The matter proceeded to a jury trial at which Kerestesi testified that she and Barkley were M.B.'s sole caregivers and they worked opposite shifts so that each could watch her while the other was working. *See* N.T., 3/6-8/23, at 31-32. Kerestesi explained that on September 21, 2020, she was at work when Barkley called her to tell her M.B. was not breathing and having a seizure, and she rushed home and they drove M.B. to the hospital. *Id*. at 33, 37. At the hospital, Kerestesi learned that M.B. had skull and rib fractures. *Id*. at 40. Kerestesi testified that she spoke to Trooper Schmid soon after M.B. was hospitalized about potential causes of M.B.'s injuries and explained to him that a few weeks before this incident, she was changing M.B.'s diaper

_____

[3] Police filed the similar charges against Kerestesi; however, the Commonwealth agreed to dismiss the charges against her in exchange for her testimony against Barkley.

- 3 -

on the bed and M.B. slipped but did not fall completely. *Id*. at 40-41, 44-45. Kerestesi further testified that a week or two before the incident she heard Barkley stumble on the stairs while carrying M.B., but he caught himself on his arm before falling on the baby. *Id*. at 45. Kerestesi explained that Barkley would routinely toss the newborn into the air and catch her. *Id*. at 67. Kerestesi testified that, a few days before M.B. was hospitalized, she was taking M.B. out of her car seat and her cheek hit the handle, resulting in a small bruise. *Id*. at 47.

Trooper Schmid testified that he interviewed Barkley and Kerestesi soon after M.B. was hospitalized to determine if there was an explanation for M.B.'s skull fractures. *Id*. at 84, 90. After doctors discovered that M.B. had healing rib fractures, the trooper interviewed Barkley and Kerestesi again, with *Miranda*[4] warnings. *Id*. at 101. Trooper Schmid then filed criminal complaints against both Barkley and Kerestesi. *Id*. at 119.

Marissa Quattrone, M.D. ("Dr. Quattrone"), a pediatrician, testified that she evaluated M.B. when she was six days old, and again at thirteen days old, and determined that she was a healthy newborn at the time. *Id*. at 143-45. Kim Fleishman, a social worker who worked with M.B. in the hospital, testified that she met with Barkley on October 26, 2020, in M.B.'s hospital room, and was in the hallway when Barkley came out and said that he wiped M.B.'s mouth and she was bleeding. *Id*. at 147-51. Adelaide Eichman, M.D. ("Dr.

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Eichman"), a pediatrician in the Child Advocacy division of the hospital, testified to her evaluation of M.B.'s physical condition upon her admission. *Id*. at 163. Dr. Eichman explained that M.B. had a bruise on her left cheek, a skull fracture on the right side of her head, and healing rib fractures on her back left side. *Id*. at 168-69. Dr. Eichman testified that M.B.'s skull fracture did not cause her seizures, but she hypothesized that there was likely a suffocation event which led to oxygen deprivation resulting in severe seizures. *Id*. at 175. Dr. Eichman explained that on October 26, 2020, M.B. also sustained an injury to her sublingual frenulum while a patient in the hospital, which caused dramatic bleeding and substantial pain to M.B. as the result of trauma to her mouth from something forcibly being inserted. *Id*. at 181-83.

Katelyn Collier ("Collier"), a case worker with children and youth services, testified that she spoke to Barkley about suffocation, which may have caused M.B.'s seizures. *Id*. at 212-17. Collier explained that Barkley claimed that he did not know how M.B. would have suffocated, as he only covers her legs with a blanket. *Id*. at 217-18.

Pergola testified to M.B.'s sustained physical impairments including a diagnosis of cerebral palsy, the use of a feeding tube, an eye condition, and trouble breathing. *Id*. at 17-18. Pergola explained that M.B. uses a breathing machine twice per day, takes multiple medications daily, and is regularly treated by various physicians and therapists. *Id*. at 19-21. Pergola testified that M.B.'s conditions will persist throughout her lifetime. *Id*. at 23.

Barkley testified regarding his regular care of M.B. *Id*. at 236-39. Barkley explained the incident where he fell on the stairs with M.B., and the day M.B. had the seizure and was hospitalized. *Id*. at 240-41. Barkley testified that he never knew about M.B. slipping on the bed until Kerestesi told the doctor about it at the hospital. *Id*. at 248. Barkley stated that, on October 26, 2020, he was with M.B. in her hospital room when her mouth filled with mucus, which he had been using sponges to clear; however, there were no sponges available, so he used a washcloth, which caused bleeding in her mouth. *Id*. at 251-52.

Before the end of trial, defense counsel requested a ruling preventing any argument by the Commonwealth that M.B. had been suffocated, as Barkley was not charged with suffocation. *Id*. at 227. The trial court ruled that defense counsel should object at closing arguments, if needed. *Id*. at 228. During the Commonwealth's closing argument, the prosecutor mentioned suffocation and defense counsel objected. *Id*. at 280. The trial court gave the jury a curative instruction, explaining that suffocation was not an injury with which Barkley was charged. *Id*. at 281. Defense counsel indicated to the trial court that the instruction was satisfactory. *Id*.

At the conclusion of trial, the jury found Barkley guilty of six counts of aggravated assault (three counts relating to M.B.'s skull fractures and three counts relating to her sublingual injury), three counts of EWOC (one relating to each injury), three counts of REAP (one relating to each injury), and two counts of simple assault (one relating to M.B.'s skull fracture and one relating

- 6 -

to her sublingual injury).[5]  On March 13, 2023, the trial court sentenced Barkley to an aggregate term of five to ten years in prison.[6]  Barkley filed a timely post-sentence motion, and the trial court conducted a hearing on the motion.  On August 21, 2023, the trial court entered an opinion and order denying Barkley's post-sentence motion.[7]  Barkley filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Barkley raises the following issues for our review:

1. Whether the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that [Barkley's] conduct on September 21, 2020[,] caused M.B. to suffer a skull fracture and/or fractured ribs?

---

[5] The jury found Barkley not guilty of three counts of aggravated assault and one count of simple assault relating to M.B.'s rib fractures.

[6] In its Pa.R.A.P. 1925(a) opinion, the trial court misstated Barkley's aggregate sentence as ten to twenty years in prison.  *See* Trial Court Opinion, 11/9/23, at 1.  However, the record reflects that the trial court imposed a sentence of five to ten years in prison for one of the aggravated assault convictions, and ordered the sentences for his other convictions to run consecutively to each other and concurrently with the aggravated assault sentence.  Accordingly, the aggregate sentence is five to ten years in prison.

[7] When the trial court fails to rule on a post-sentence motion within 120 days, the motion is deemed denied by operation of law, and the clerk of courts is required to enter an order reflecting the denial.  *See* Pa.R.Crim.P. 720(B)(3)(a), (c).  Here, the 120-day period for decision on Barkley's post-sentence motions expired on July 21, 2023; however, no order was entered by the clerk denying the motion by operation of law.  When the court clerk fails to enter an order denying a post-sentence motion by operation of law, a breakdown of the court has occurred.  *See Commonwealth v. Patterson*, 940 A.2d 493, 499 (Pa. Super. 2007).  Nevertheless, after the 120-day period had expired, the trial court entered an order denying the motion.  Given the breakdown in court operations, we conclude that Barkley timely filed his notice of appeal within thirty days of the August 21, 2023 order denying his post-sentence motion.  *See* Pa.R.Crim.P. 720(A)(2)(a).

- 7 -

2. Whether M.B.'s sublingual injury to her frenulum constitutes a serious injury under 18 Pa.C.S.[A.] § 2602?

3. Whether the verdict was against the weight of the evidence with respect to the jury's verdict that [Barkley] fractured M.B.'s skull and ribs on September 21, 2020?

4. Whether the trial court abused its discretion in failing to order a mistrial based on [the] prosecutor's improper closing argument to the jury that [Barkley] had suffocated M.B.[,] causing the child to suffer a severe brain injury?

Barkley's Brief at 16 (issues reordered for ease of disposition).

In his first two issues, Barkley challenges the sufficiency of the evidence supporting his convictions.[8] A challenge to the sufficiency of the evidence presents a question of law for which our standard of review is *de novo* and our scope of review is plenary. *See Commonwealth v. Johnson*, 236 A.3d 1141, 1152 (Pa. Super. 2020). When considering a challenge to the sufficiency of the evidence:

> [W]e evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from

---

[8] Although Barkley frames his second issue as a challenge to the denial of his motion for judgment of acquittal, a motion for judgment of acquittal amounts to a challenge to the sufficiency of the evidence to sustain a conviction. *See Commonwealth v. Stahl*, 175 A.3d 301, 303 (Pa. Super. 2017). Therefore, we employ the same standard of review. *See id*. at 303-04.

the combined circumstances.

> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa. Super. 2013) (internal quotations and citations omitted). Importantly, "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Orr*, 38 A.3d 868, 873 (Pa. Super. 2011) (*en banc*).

In his first issue, Barkley contends that the evidence was insufficient to sustain the convictions stemming from M.B.'s skull and rib fractures. In this regard, the jury convicted Barkley of six offenses for M.B.'s skull fractures (three counts of aggravated assault, and one count each of simple assault, EWOC, and REAP) and two offenses for her rib fractures (EWOC and REAP), each containing elements that the Commonwealth must prove beyond a reasonable doubt. *See* 18 Pa.C.S.A. §§ 2702(a)(1), (9), (8), 4304(a)(1), 2705, 2701(a)(1).

However, Barkley does not argue that the Commonwealth failed to establish any element of those crimes. Rather, he asserts that the

Commonwealth failed to prove that he committed those crimes on the specific date indicated in the criminal information. The Rules of Criminal Procedure provide that a criminal complaint generally must contain the date of the alleged offense, however, "if the specific date is unknown, or if the offense is a continuing one, it shall be sufficient to state that it was committed on or about any date within the period of limitations." Pa.R.Crim.P. 504(4)(a). The Commonwealth is not always required to prove a single, specified date on which a crime occurred; instead, there is leeway which varies with the nature of the crime and condition of the victim. *See Commonwealth v. Devlin*, 333 A.2d 888, 892 (Pa. 1975). When there is a dearth of evidence to prove an exact date of an offense, evidence tending to show a timeframe in which the offense occurred will be sufficient. *See Commonwealth v. Fanelli*, 547 A.2d 1201, 1205-06 (Pa. Super. 1988) (*en banc*).

Barkley argues that the Commonwealth failed to prove that M.B. sustained a skull fracture on September 21, 2020, while he was caring for her. Barkley refers to Dr. Eichman's testimony in which she explained that, based on an x-ray, it is hard to determine an exact date when a skull fracture has occurred. Barkley claims that because M.B.'s x-ray does not prove what date her skull fractures occurred, the Commonwealth did not prove he inflicted the injuries on September 21, 2020. Barkley further argues that Dr. Eichman's testimony specifically ruled out the possibility that the rib fractures occurred

on September 21, 2020, because she explained that the x-rays showed that the fractures were already healing by that time.

The trial court addressed Barkley's first issue and found that it lacked merit. The trial court reasoned:

> While [Dr. Eichman] could not specifically state the injury was from the September 21, 2020 date, []the jury could determine that, based on the baby's change of behavior and lack of physical response to stimuli, inability to breathe and unresponsiveness, the injury occurred on that date and that [Barkley] was the cause of the injury.

Trial Court Opinion, 11/9/23, at 5.

Viewing the evidence in the light most favorable to the Commonwealth and giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence, we conclude that Barkley's convictions are supported by sufficient evidence. Barkley and Kerestesi's testimony demonstrated that they observed no medical issue with M.B. until September 21, 2020, when they brought her to the hospital and her skull and rib fractures were discovered. Dr. Quattrone testified to her examination of M.B. in mid-August 2020, when she was two weeks old and presented as a healthy newborn. As M.B. was only seven weeks old at the time of her hospitalization, these injuries must have occurred within a five-week span. The criminal complaint listed the dates of M.B.'s skull and rib fractures as on or about September 21, 2020. Based on M.B.'s age, her good physical condition in mid-August 2020, and the nature and severity of her diminished condition and injuries on September 21, 2020, there was sufficient evidence from which the jury could find beyond a

reasonable doubt that her skull and rib fractures occurred on or about September 21, 2020. Accordingly, Barkley's first issue merits no relief.

In Barkley's second issue he claims the trial court erred in denying his motion for acquittal regarding his convictions for three counts of aggravated assault and one count of REAP for M.B.'s sublingual injury. A person is guilty of aggravated assault if he: "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;" "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to a child less than six years of age, by a person 18 years of age or older;" or "attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to a child less than 13 years of age, by a person 18 years of age or older." 18 Pa.C.S.A. §§ 2702(a)(1), (8), (9). A person is guilty of REAP if he "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705.

Bodily injury is defined as: "impairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301. Serious bodily injury is a bodily injury "which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id*.

Barkley argues that the Commonwealth failed to establish that M.B.'s sublingual injury constituted a serious bodily injury beyond a reasonable

doubt. Barkley concedes that Dr. Eichman testified that M.B.'s sublingual injury was serious. However, Barkley contends that M.B.'s injury did not require surgery or sutures, and did not cause her to suffer any protracted loss or impairment of function in a bodily organ. Barkley claims that the lack of a serious bodily injury entitles him to judgment of acquittal on all three counts of aggravated assault and the one count of REAP relating to M.B.'s sublingual injury.

The trial court considered Barkley's second issue and concluded that it lacked merit. The court reasoned:

> . . . [Dr. Eichman] determined that it was a serious injury, causing the baby substantial pain and discomfort. At the aggravated assault charges, the language is attempted to cause serious bodily injury. [Dr. Eichman] testified that there was blunt trauma to the mouth which caused [M.B.] substantial pain. . . .
>
> The evidence presented established that there was an attempt to cause her serious bodily injury . . . sufficient to support the charges for a jury to determine guilt. . . .
>
> * * * *
>
> As to the torn sublingual frenulum, [Dr.] Eichman testified that the frenulum attaches the tongue to the mouth and is located under the tongue. [Dr.] Eichman stated that this injury was not the result of normal childcare but rather this was trauma to the mouth and trauma under the tongue. She described this as blunt force trauma to the area and that something was forcibly put into [M.B.'s] mouth. She also stated that this would have caused [M.B.] substantial pain and there was substantial bleeding. The jury could reasonably conclude that this injury was an attempt to cause serious bodily injury. Blunt force trauma to the mouth of a very young baby could be viewed as an attempt to permanently harm the child.

Trial Court Opinion, 11/9/23, at 6, 8.

- 13 -

Viewing the evidence in the light most favorable to the Commonwealth and giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence, we conclude that Barkley's convictions are supported by sufficient evidence. Initially, we note that aggravated assault of a child less than six years of age by a person 18 years of age or older requires a showing that the person attempts to cause or actually causes bodily injury. **See** 18 Pa.C.S.A. § 2702(a)(8). The statute does not reference serious bodily injury. Thus, the Commonwealth was not required to prove that Barkley either attempted to cause or actually caused serious bodily injury to M.B. Barkley's argument, therefore, does not extend to his conviction for aggravated assault of a child less than six years of age.

With respect to Barkley's remaining convictions for aggravated assault and REAP, Dr. Eichman's testimony clearly established that the sublingual injury was a serious bodily injury which caused M.B. substantial pain and significant bleeding. While Dr. Eichman testified that the injury was able to heal on its own, she explained that it was nonetheless the result of blunt trauma and was not an injury that occurred during normal childcare. Thus, we conclude that the evidence at trial was sufficient to establish that M.B.'s sublingual injury constituted serious bodily injury where the testimony showed that she bled significantly and would have experienced significant pain. Accordingly, Barkley's second issue entitles him to no relief.

In Barkley's third issue, he claims that the verdict was against the

weight of the evidence. As our Supreme Court has explained:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (citations and footnote omitted). The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses. *See Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015). Thus, in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the trial court. *Id*. at 546.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of*

> ***whether the verdict is against the weight of the evidence***.
> Because the trial judge has had the opportunity to hear and see
> the evidence presented, an appellate court will give the gravest
> consideration to the findings and reasons advanced by the trial
> judge when reviewing a trial court's determination that the verdict
> is against the weight of the evidence. One of the least assailable
> reasons for granting or denying a new trial is the lower court's
> conviction that the verdict was or was not against the weight of
> the evidence and that a new trial should be granted in the interest
> of justice.

***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted, emphasis in original).

In presenting his weight challenge, Barkley recounts the trial testimony of Dr. Eichman and Kerestesi and claims that such testimony demonstrates that the jury's verdict was against the weight of the evidence. Barkley initially reasserts his position that there was a lack of medical evidence to prove that M.B. suffered skull and rib fractures on September 21, 2020. Barkley further argues that the incidents described by Kerestesi, wherein M.B. slipped on the bed and was hit on the cheek by the car seat, demonstrate that there were other potential causes of her injuries such that the verdict was against the weight of the evidence.

The trial court considered Barkley's weight challenge and determined that it lacked merit. The trial court reviewed the record and found that the jury's verdict did not shock its conscience. ***See*** Trial Court Opinion, 11/9/23, at 7. Furthermore, the trial court noted that the verdict seemed to be well-reasoned, as the jury acquitted Barkley on some of the charges and found him guilty of others. ***See id***.

Following our review, we discern no abuse of discretion by the trial court in rejecting Barkley's weight claim. The jury had the exclusive province to believe all, part, or none of the evidence presented, and to make credibility determinations regarding the testimony. **See Talbert**, 129 A.3d at 545. Additionally, because the trial court judge had the opportunity to hear and see the evidence presented, this Court gives the gravest consideration to the findings and reasons advanced by the judge when reviewing its determination regarding the weight of the evidence. **See Clay**, 64 A.3d at 1055. Based on the record before us, and the sound reasoning provided by the trial court, we decline to disturb its determination that the verdict did not shock its conscience. Accordingly, Barkley's third issue merits no relief.

In Barkley's fourth issue he claims the trial court erred in failing to grant a mistrial based upon the prosecutor's remarks regarding Barkley causing all of M.B.'s injuries, including suffocation, during the Commonwealth's closing argument. Preliminarily, we must determine whether Barkley preserved this issue for our review. As explained above, defense counsel objected to the prosecutor's references to suffocation and requested the trial court give the jury a curative instruction. **See** N.T, 3/6-8/23, at 280-81. The trial court provided a curative instruction and specifically asked defense counsel if the instruction was satisfactory. **See id**. at 281. Notably, defense counsel responded in the affirmative. **Id**. Defense counsel did not request a mistrial. Thus, Barkley's claim that the trial court should have granted his non-existent

motion for mistrial is patently meritless. Moreover, Barkley's counsel agreed that the prosecutor's remarks were remedied by the curative instruction. ***Id***. When a party objects, but thereafter agrees that their concerns have been ameliorated by a curative instruction, any prejudice has been cured. ***See Commonwealth v. Brooks***, 508 A.2d 316, 322 (Pa. Super. 1986). Accordingly, Barkley's fourth issue merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 09/13/2024